**SOUTHEAST BANK OF ORLANDO, and Marcia Andersen Murphy as Co-Trustees of the Jeanette Andersen Trust**

v.

**The UNITED STATES.**

No. 281–80T.

United States Court of Claims.

April 7, 1982.

John J. Reid, Orlando, Fla., attorney of record, for plaintiffs. Eugene B. Cawood and Giles, Hedrick & Robinson, Orlando, Fla., of counsel.

Bruce W. Reynolds, Washington, D. C., with whom was Acting Asst. Atty. Gen. John F. Murray, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before DAVIS, NICHOLS and SMITH, Judges.

DAVIS, Judge:

Plaintiffs are the trustees of the Jeanette Andersen Trust. In 1965, the trust sold stock, with payments to be made on notes in yearly installments from 1966 through 1980. The gain on the sale was distributed to Jeanette Andersen, the income beneficiary of the trust. She died in December 1968 and the total value of the trust, including the capital gain, was included in the estate and subjected to the estate tax. In an earlier tax refund suit for 1969 through 1972, this court held for taxpayers, ruling that under § 691 of the Internal Revenue Code the capital gains were "income in respect of a decedent," so that the trust was entitled to a deduction from the estate taxes that were attributable to the gains. *Sun First National Bank of Orlando v. United States*, 221 Ct.Cl. ——, 607 F.2d 1347 (1979).

The present case involves the same facts for the following year, 1973. On the trust's Fiduciary Income Tax return for 1973, a deduction was taken under § 691(c), for estate tax for income in respect of decedents. The Internal Revenue Service disallowed this deduction and assessed a deficiency of $49,330.37. After paying this sum, plaintiffs filed an administrative claim on August 20, 1975, seeking a refund alleging that the gain on the 1973 note was income in respect of a decedent and that a deduction of a proportion of the estate tax attributable to such gain was allowable under § 691. This claim was rejected by the Service on January 14, 1977. All this was before our decision for the earlier year, *supra.*[1]

On March 24, 1978, plaintiffs filed a second claim for refund arguing that, if the gain did not fall under § 691, then, because the installment notes had been included in the estate they should be valued for capital gain purposes at the value used for estate tax purposes, a stepped up basis under Code § 1014, 26 U.S.C. § 1014 (1976). This second claim for 1973 was disallowed on June 1, 1978. That notice of disallowance provided in relevant part:

"We are sorry, but we cannot allow your claim, which we received Mar. 30, 1978. This is your legal notice that your claim is disallowed.

"A claim for credit or refund cannot be allowed if, as in your case, the claim is filed more than three years after the return was filed or two years after the tax was paid, whichever is later.

"Our records show a claim was filed on August 20, 1975, relating to the same issue and overpament [sic] of the same amount of tax. An audit of the tax account resulted in a disallowance of the claim. You were notified of the disallowance.

"If you wish to bring suit or proceedings for the recovery of any tax, penalties, or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or the United States Court of Claims. The law permits you to do this within two years from the mailing date of this letter."

In a letter, taxpayer claimed that the untimeliness basis for disallowance was clearly incorrect and sought to have the Service review the case further because the disallowance was wrong. No response was received.

Taxpayer then brought this action (on May 29, 1980) challenging the Service determinations for 1973 under § 691 and § 1014.[2] In its motion for summary judg-

---

1. These events also occurred before the court's prior decision (on November 15, 1978) in *Sun First National Bank*, adverse to the taxpayers, a decision which was overturned on rehearing in the opinion of October 17, 1979, *supra.*

2. In the Spring of 1981 Southeast Bank of Orlando was substituted as co-trustee and co-

ment, defendant does not seek to reargue the merits of the *Sun First National Bank* decision but contends instead that this court lacks jurisdiction over the first refund claim because suit was not brought on the § 691 claim within two years after the original disallowance notice. *See* 26 U.S.C. § 6532(a)(1) (1976). The alternative claim under § 1014, the Government says, is barred by collateral estoppel because our prior decision, holding § 691 applicable, necessarily means that § 1014 cannot govern. In contrast, plaintiffs' cross-motion for summary judgment asserts that suit under § 691 is timely and that, in any event, § 1014 can properly apply. We do not reach the second aspect of the case (*i.e.* the claim under § 1014) because we hold that suit under § 691 was within time limits and taxpayers should prevail on that basis.

▮▮▮ All admit that, if the suit under § 691 must rest on the first refund claim for 1973, it is far beyond the two-year limit. The only real issue is whether the second disallowance founded another claim under § 691 which can now be vindicated because this suit came less than two years after that second denial of a refund. Our rulings are that (1) taxpayers and the court can and should reasonably view the second disallowance as incorporating a reconsideration of the § 691 claim previously rejected, and (2) a formal reconsideration and disallowance of this type begins a new period of limitations for suit.

1. It is plain to us that, at the very best for the Government, the second allowance was extremely ambiguous. The second paragraph, *supra*, appears to reject the claim, which was squarely based on § 1014, because it was not timely filed with the Service.[3] There was no need whatever for any further discussion of that particular

claim or for any consideration of its relation to the § 691 claim. Nevertheless, the disallowance added the third paragraph, *supra*, noting that the new § 1014 claim and the earlier § 691 claim relate to the "same issue and overpayment of the same amount of tax." Note that the Service specifically said "the same issue", as well as the "same overpayment". The "same issue" clearly connotes that the § 1014 claim was the mirror-image of the § 691 demand. This founds the strongest of inferences that the Service had, for the purposes of assessing the second claim under § 1014, deliberately considered the interrelatedness of both claims. Two separate conclusions can then be drawn: the IRS either reconsidered the claim that the gain was "income in respect of a decedent" under § 691—the common issue between the two tax sections—and rejected it again, or the agency was simply noting the common question and declining to reconsider it under § 691.[4] Certainly, the latter reading is not compelled, and there are very good grounds for thinking that the Service did in fact reconsider. There was no need, as we have noted, to go any further into the § 1014 claim which was flatly denied on timeliness grounds. It was not necessary (or even relevant) to consideration of that basis for denial of the § 1014 claim to find that it involved the "same issue" as the prior § 691 claim; taxpayers' second refund claim was based on § 1014 alone and did not ask for reconsideration of the § 691 aspect. The third paragraph is, therefore, wholly extraneous and very hard to explain except as a summary statement that the Service had reconsidered (and again rejected) the § 691 claim (which it obviously considered to be inextricably connected with the § 1014 claim directly before it).

plaintiff for Sun First National Bank of Orlando.

3. This seems to have been an erroneous conclusion, and defendant does not now argue that we are without jurisdiction to consider the merits or substance of the § 1014 claim.

4. It is possible that IRS wholly failed to note that the new claim raised § 1014 and the for-

mer one rested on § 691, and therefore considered both claims as precisely the same, invoking only § 691. Taxpayers, however, could reasonably believe that the Service would not be so careless as to make such an egregious mistake on the second refund claim, and therefore properly assumed that the agency recognized the existence in the case of both § 691 and § 1014.

At the very least, this understanding of the second notice is so plausible that plaintiffs could have reasonably relied upon it.[5] Ambiguities are most often resolved against the drafter of the document. *United Pacific Insurance Co. v. United States*, 204 Ct.Cl. 686, 695, 497 F.2d 1402, 1407 (1974); *Peter Kiewit Sons Co. v. United States*, 109 Ct.Cl. 390, 418 (1947). In cases of patent ambiguities, a party may be obliged to ask about the unclear language in order to try to resolve the ambiguity, and must assume the risk that its own interpretation may be different from that of the drafter if it does not ask. *Beacon Construction Co. v. United States*, 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 504 (1963). We are not sure that we have here the kind of "glaring discrepancy" requiring prior clarification. *See Mountain Home Contractors v. United States*, 192 Ct.Cl. 16, 21–22, 425 F.2d 1260, 1263–64 (1970); *WPC Enterprises, Inc. v. United States*, 163 Ct.Cl. 1, 6, 323 F.2d 874, 876 (1963). In any case, the corollary to this duty to request clarification is that, if the party complaining does inquire about the problem, and is not assisted by the Government as the drafter of the document, then the complainant's reasonable interpretation will be upheld. That is the situation here because plaintiffs did inquire of the IRS, without response, as to the reach and correctness of the notice.[6]

Accordingly, we find with taxpayers that the Service did reconsider and deny the § 691 claim in the second notice of disallowance.

2. The next question is whether this reconsideration had any effect on the time for filing this action. The Government's argument is that the Internal Revenue Code provides that reconsiderations do not extend the statute of limitations, IRC § 6532(a)(4), and that any extensions of time must be formally agreed to by the parties, using an IRS Form 907, IRC § 6532(a)(2). *See* U.S.C. § 6532(a)(2), (4) (1976).[7]

These statutory provisions have recently been construed by this court in *Heath v. United States*, 219 Ct.Cl. 582 (1979), and we are bound by the court's decision there.[8] In *Heath*, the plaintiffs received two notices disallowing their refund claims. The second letter was sent to correct the date which the original notice had listed for the day the plaintiffs had filed their claims. This follow-up notice was a form disallowance letter which indicated that the plaintiffs had two years from its mailing date to file suit for a refund. Plaintiffs filed suit more than two years after the initial disallowance but within two years after the mailing of the correction letter. The court held that the second notice extended the filing deadline. It reasoned that § 6532(a)(4) precludes extensions only for informal reconsideration, and that when a second notice (a formal disallowance) creates sufficient uncertainty so that the claimant reasonably believes that the statute of limitations is to begin running

---

5. We do not find, as plaintiffs suggest, that their interpretation of the notice was the sole possible understanding. They repeatedly argue that the language of the fourth paragraph, *supra*, allowing them to file suit within two years makes sense only if there was a reconsideration of the § 691 claim because, they contend, since their § 1014 claim was held to be untimely there was no possibility of appealing it, and paragraph four indicating that option would make no sense for the § 1014 claim. However, the appeal available could possibly have been an appeal of whether their § 1014 claim was actually untimely.

6. If the Service did indeed make the gross mistake referred to in n.4, *supra*, taxpayers' letter should certainly have also alerted it, and triggered a response.

7. 26 U.S.C. § 6532(a)(4):

"(4) *Reconsideration after mailing of notice.* —Any consideration, reconsideration, or action by the Secretary of his delegate with respect to such claim following the mailing of a notice by certified mail or registered mail or disallowance shall not operate to extend the period within which suit may be begun."

26 U.S.C. § 6532(a)(2):

"(2) *Extension of time.*—The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary or his delegate."

8. To overrule a prior decision requires this court to sit *en banc*. Defendant did not request that this case be heard *en banc*.

from the date of the second notice then the defendant is equitably estopped from arguing a bar due to the statute of limitations. 219 Ct.Cl. at 583–84. *Accord, Miller v. United States*, 500 F.2d 1007, 1010–11 (2nd Cir. (1974)).

Two principles may be gleaned from *Heath* and *Miller*. First, a reconsideration which results in a formal disallowance by the Service can extend the period within which suit can be brought. To that end, § 6532 should be construed flexibly. *Beardsley v. United States*, 126 F.Supp. 775, 777 (D.C.D.Conn.1954) (construing a similar predecessor provision); *see DeGregory v. United States*, 395 F.Supp. 171, 175 (D.C.E.D.Mich.1975). Second, the time for filing should be extended when the claimant is understandably confused by a second notice of disallowance, and acts reasonably. Both components are present here in full force.

The principal cases relied on by defendant are inapposite. *Kelson v. United States*, 503 F.2d 1291 (10th Cir. 1974), did not involve a formal reconsideration by the Service of the original claim. 503 F.2d at 1293. In *Einson-Freeman Co. v. Corwin*, 112 F.2d 683 (2nd Cir.), *cert. denied*, 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 449 (1940), the taxpayer tried to extend the statute of limitations by filing a second claim on grounds substantially similar to those used in the first claim. 112 F.2d at 684. *See Union Commerce Bank v. United States*, 463 F.Supp. 842, 843 (D.C.N.D.Ohio 1978),

*aff'd*, 638 F.2d 962, 963 (6th Cir. 1981); *Harvard Trust Co. v. United States*, 262 F.Supp. 860, 862 (D.C.D.Mass.1967). As noted in *Miller*, "[C]ases holding that a taxpayer cannot extend the statute by filing successive claims ... [do not apply where] it was not the taxpayers' unilateral filing of a second claim, but rather the Commissioner's error in sending the unnecessary disallowance notice that arguably extended the critical deadline." 500 F.2d at 1010. Here, the Commissioner's inclusion of the extraordinary third paragraph, *supra*, created the same reasonable belief as the unnecessary notice in *Miller* and the corrected notice in *Heath*.

Even if we could disavow the rationale of *Heath*, we are not persuaded by the legislative history of § 6532 that Congress intended absolutely to prohibit extension of the time via a formal reconsideration and disallowance. The problem being addressed by Congress when it enacted subsection 6532(a)(4) [9] was that the IRS could be said to reopen a claim and yet never formally redecide it. This left the statute of limitations open indefinitely. It was the problem created by the failure to close a case that led to (a)(4), not problems created by any and all reconsiderations, no matter how formal and definite a closing or disallowance.

Defendant cites the discussion in the House Report as proof of Congress' intention that any reconsideration should not result in an extension of the deadline.[10] It

---

**9.** The present language of the statute was adopted in the Revenue Act of 1936, § 807, ch. 690, 49 Stat. 1648.

**10.** The Committee wrote that:

"Section 208 amends section 3225 of the Revised Statutes and is designed to permit further consideration or action by the Commissioner of Internal Revenue, in connection with a claim for refund after he has once disallowed it, without extending the period within which a suit for recovery of the refund may be brought. Existing law now requires that a taxpayer brings suit within 2 years after the Commissioner has disallowed his claim for refund. The courts have held that if the Commissioner reconsiders a claim after he has disallowed it, the 2-year period does not begin to run until a second decision has been made. It is obviously in the interest of the taxpayer that the Commissioner

should reconsider claims for refund, and thus permit the taxpayer to have an opportunity to secure a refund administratively without resort to court action. Under existing court decisions, there is so much uncertainty as to what constitutes reconsideration of a claim, that *the Bureau of Internal Revenue is reluctant to take action with respect to a claim after it has once been disallowed, because of the fear that the case may be reopened indefinitely and thus result in further administrative expense with respect to such claim. It is felt that when the Bureau answers letters of inquiry and extends to taxpayers the courtesy of investigating into closed files, it should not be compelled to do so at the risk of indefinitely prolonging the period of limitations.* The proposed amendment it is felt will permit a more liberal treatment on the part of the Bureau of Internal Revenue in reconsidering claims for refund once they have

is clear, however, that Congress, at least the House, was concerned about taxpayers extending the deadline indefinitely. Even in 1936 this could occur only if there was no formal decision made on reconsideration. *Pacific Mills v. Nichols*, 72 F.2d 103, 107 (1st Cir. 1934). If a decision is made on reconsideration the deadline is extended to two years after the second notice, as the Committee notes. There was also no possibility in 1936 that claimants could extend the deadline indefinitely by repeatedly filing new refund claims on the same grounds, thereby forcing reconsideration and extension of the filing time. The cases have consistently held that a new claim founded on the same grounds does not extend the statute of limitations. *See, e.g., B. Altman & Co. v. United States*, 69 Ct.Cl. 721, 727, 40 F.2d 781, 784, *cert. denied*, 282 U.S. 863, 51 S.Ct. 36, 75 L.Ed. 763 (1930); *Stratmore v. United States*, 463 F.2d 1195, 1196–97 (3rd Cir. 1972); *18th Street Leader Stores v. United States*, 142 F.2d 113, 115–16 (7th Cir.), *cert. denied*, 323 U.S. 725, 65 S.Ct. 61, 89 L.Ed. 583 (1944). The concern Congress had, therefore, was over prolonging the deadline by the Service's not taking formal action. This is borne out by the Committee's emphasis (*see* note 10, *supra*) on the dangers of taking as a true reconsideration the Service's routine or informal responses to inquiries. There was no fear of a formal reconsideration and disallowance.

Defendant says, too, that all extensions of time must comply with § 6532(a)(2) which, it alleges, requires a formal extension agreement between the parties, calling for the signing of a Form 907. The simplest answer is that the second disallowance notice giving plaintiffs two years from its mailing date to bring suit was, in essence, an agreement to extend the time deadline; it is clear from *Heath* and *Miller* that an extension need not be given only through Form 907. The reconsideration notice here, as in *Heath*, was so unclear as to create a wholly reasonable belief in plaintiffs' minds as to the extended filing deadline. In such a case where it is reasonable to believe there has been a reconsideration followed by a formal disallowance notice, and where the notice seems to extend the statute of limitations, a claimant is entitled to act on its reasonable view without forfeiting its right to bring suit.

3. On the merits of the § 691 claim there is no contest and defendant attempts none; our *Sun First National Bank* decision, *supra*, is fully controlling. Plaintiffs must prevail.

On these grounds, we deny defendant's motion for summary judgment, grant plaintiffs' cross-motion, and hold that the latter are entitled to recover. The case is remanded to the Trial Division under Rule 131(c) to determine the amount of recovery.

NICHOLS, Judge, concurring:

I concur in the result. It seems to me, if one reads the unhappy IRS letter of June 1, 1978, as its author probably meant it, it would be a refusal to reconsider, not a reconsideration. To translate it into the vernacular: "I decided this claim against you before. You are a day late and a dollar short. Now stop bugging me about it. If you don't like what I have done, sue me!" Had he addressed anyone but a law firm, he would probably have been so understood. But I agree defendant ought not to get away with its defense, inequitable as it is. Had I been assigned the delivery of the court's opinion, I might have propounded something that seemed to other members of the panel as strained as this seems to me. There is also to be said: the more completely the court misconstrues the IRS's letter, the more educational our decision will be to the IRS to write better ones in the future, or to pay some attention to taxpayers who, as here, write in for clarification. To an official letter like this, the court will assign whatever meaning it deems requisite to do justice in the premises, within the range of

been rejected, and will eliminate the confusion now existing as to just what constitutes reconsideration of a claim so as to extend the period of limitations."

H.Rep.No.2818, 74th Cong., 2d Sess. 11 (1936) (emphasis added).

plausibility, of course. But, without assigning impossible meanings, it is astounding with what versatility the legal mind can construe a written instrument, even when more care has gone into its composition than here. The court's construction is strained, but possible, as constructions go.