831 F.2d 1051
 60 A.F.T.R.2d 87-5778, 87-2 USTC P 9574
 Heinz HABER, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 87-1102.
 United States Court of Appeals,
Federal Circuit.
 Oct. 21, 1987.
 
 Edward Ord, Ord & Norman, of San Francisco, Cal., argued for plaintiff-appellant.
 B. Paul Klein, Dept. of Justice, of Washington, D.C., argued for defendant-appellee. With him on the brief were Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and Gilbert S. Rothenberg.
 Before MARKEY, Chief Judge, NEWMAN, and BISSELL, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Mr. Heinz Haber (taxpayer) appeals an Order of the United States Claims Court granting the government's motion to dismiss his suit for refund based on foreign taxes paid. Haber v. United States, 8 Cl.Ct. 371 (1985). We reverse.
 
 Background
 
 2
 Taxpayer, a resident of the Federal Republic of Germany, relying on the ten-year limitation period set in the Internal Revenue Code[1] for seeking refund based on credit for foreign taxes paid, filed claims in June, 1977 for the tax years 1970 and 1971, in the amounts of $21,338 and $17,059. The Internal Revenue Service sent taxpayer, through his accountant in the United States Mr. Lasker, a notice of disallowance dated November 14, 1977, stating that the ten-year limitation period for filing such claims did not apply, and that the claims were barred. The Service was at that time involved in litigation based on that position, and in 1978 received three adverse decisions: Allatt v. United States, 218 Ct.Cl. 694 (1978); Hart v. United States, 585 F.2d 1025, 218 Ct.Cl. 212 (Ct.Cl.1978); and United States v. Woodmansee, 578 F.2d 1302 (9th Cir.1978). Similar adverse decisions had been received in the past, e.g., Bank of America v. United States, 377 F.2d 575 (Ct.Cl.1967). These decisions held that 26 U.S.C. Sec. 6511(d)(3)(A) did indeed provide a ten-year limitation period for applying for refunds based on foreign taxes paid, and that other, shorter, periods of limitation did not apply.
 
 
 3
 Mr. Lasker averred that he had telephone conversations with IRS personnel in Washington, D.C. and in the Philadelphia IRS Service Center where foreign taxpayers file returns "during the two year period following the 1977 notice; that during these conversations he was "lead [sic] to believe that the notice, dated November 14, 1977 ... had been withdrawn and that an extension had been granted" so that he "could continue to pursue the matter on an administrative level". He stated that he could not now (in 1985) remember the specific dates and names of the IRS personnel with whom he spoke because of the long time period between these conversations and the giving of his declaration. He stated that he discussed the Hart and Woodmansee cases with the IRS representatives, and that he "did rely on these representations" and believed that the 1977 disallowance was withdrawn. The IRS records of taxpayer Haber's files for this period have been destroyed, and thus provide no enlightenment as to the IRS' side of these conversations, the actions it took, and its reasons.
 
 
 4
 On October 26, 1982 the IRS sent taxpayer a notice of disallowance of his claim for the tax year 1970. This notice made no reference to the notice dated November 14, 1977, to which it was substantially identical. Both the 1977 and the 1982 notices contained the provision:
 
 
 5
 If you wish to bring suit or proceedings for the recovery of any tax, penalties, or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or with the United States Court of Claims. The law permits you to do this within 2 years from the mailing date of this letter.
 
 
 6
 Taxpayer filed suit in the Claims Court on October 17, 1984, within two years after the 1982 notice of disallowance. The Claims Court held that taxpayer's suit is barred because it was not filed within 2 years after the 1977 notice.
 
 Discussion
 
 7
 Taxpayer contends that the period of limitation for this suit is measured from the October 26, 1982 notice of disallowance, because the IRS's withdrawal of the 1977 notice removed it as an official action to which the limitation period applied.
 
 
 8
 The taxpayer's version of the facts concerning the 1977 notice is uncontradicted. Further, as the Claims Court observed, factual inferences are required to be drawn favorably to Haber on this government motion to dismiss, which requires that "the facts alleged by plaintiff [be accepted] as true." Featheringill v. United States, 217 Ct.Cl. 24, 26 (1978). See also Jewelers Vigilance Committee v. Ullenberg Corp., 823 F.2d 490, 492, 2 USPQ2d 2021, 2023 (Fed.Cir.1987).
 
 
 9
 The issue thus is whether the taxpayer was entitled to rely on the oral statement by the Service that the 1977 notice was withdrawn. The government states that a prudent accountant should have filed suit within two years after the November 1977 notice, and that taxpayer did not act reasonably.
 
 
 10
 Taxpayer argues that it was clear, in view of the several contemporaneous decisions adverse to the IRS position, that the 1977 disallowance was in error. Since taxpayer was plainly entitled to the refund, he argues, it was reasonable to believe the oral statement that the notice was withdrawn. The government conceded before the Claims Court that the IRS could orally withdraw a notice of disallowance.
 
 
 11
 Reinforcing taxpayer's argument is the 1982 notice of disallowance, which makes no reference to the 1977 notice. The 1982 notice supports an inference that the IRS considered the 1977 notice withdrawn because, without such withdrawal, there was no reason for the IRS to send a new notice five years later. No such reason has been offered by the government. The IRS offered no evidence to rebut the inference that the IRS considered that it was writing on a clean slate in its 1982 disallowance of the claim. The destruction by the Service of records of active cases has not been justified, and requires that the government face the same adverse inferences therefrom as would a private person. The government can not prevail on unsupported arguments that could be defeated by information reasonably expected to be contained in its destroyed files.
 
 
 12
 The Claims Court found that the taxpayer did not act reasonably, in his inaction during the period after receipt of the 1977 notice. We agree that no sense of urgency wells from taxpayer's approach to the entire matter. The taxpayer's apparent unconcern for the passage of time is matched only by that of the Service, which issued a notice of disallowance in 1982 on a refund claim filed in 1977 for a 1970 tax, said notice bottomed on a legal position on which the courts have regularly held against the Service.
 
 
 13
 Taxpayer cites Beardsley v. United States, 126 F.Supp. 775 (D.Conn.1954), to support the argument that he was entitled to rely on the oral advice that the first notice was withdrawn. In Beardsley the taxpayers received a notice of disallowance without the customary thirty day letter. Taxpayers' attorney was orally told that the notice of disallowance could be ignored. More than two years later taxpayers received a letter "reaffirming" the disallowance. In rejecting the government's position that suit was barred by the statute of limitations measured from the date of the first notice, the court observed that "the statute does not in specific terms prohibit withdrawal, revocation, or cancellation of the notice by the Commissioner", id. at 777, and held that the original notice had been, in effect, withdrawn. The Claims Court stated that "the facts in Beardsley closely parallel [Haber's] situation", but distinguished Beardsley because there the parties had stipulated that an authorized IRS official had told the Beardsleys to ignore the first notice. Haber asserts that because the IRS failed to produce records during discovery, he could not adduce evidence that the personnel who led Mr. Lasker to believe that the first notice had been withdrawn were "authorized".
 
 
 14
 Although the significance of missing records is to be determined with respect to the circumstances of each case, the government's challenge to the authority of the personnel who gave the oral notice of withdrawal can not shift to taxpayer the burden of proving that the personnel were not unauthorized. The burden of coming forward remains with the government, and the prejudicial effect of its destruction of active files weighs against it. See Belton v. Commissioner, 562 F.Supp. 30, 31-33 (D.D.C.1982) (based on "inactivity of the agency, and the government's [indication] that the files may have been destroyed", the court found estoppel based on "the cumulative prejudicial effect of the facts").
 
 
 15
 The government also argues that the two-year period for filing suit can be extended only in writing[2], and that an oral withdrawal of a notice is prohibited by the statute. In essence, the IRS argues that a withdrawal of a disallowance is the equivalent of an indefinite extension of time for filing suit. This position is not supported by the statute. Section 6532(a)(2) presupposes, and requires, that an effective notice of disallowance exists. If that notice was withdrawn, there is nothing to extend. The issue at bar is not whether there was an extension of a term of limitation; it is whether the term ever started.
 
 
 16
 We conclude that the Claims Court erred in holding that taxpayer could not have reasonably believed that the November 1977 notice was withdrawn. Our predecessor court has stated that "taxpayers and the court can and should reasonably view the second disallowance as incorporating a reconsideration of the ... claim previously rejected...." Southeast Bank of Orlando v. United States, 676 F.2d 660, 662, 230 Ct.Cl. 277 (1982). On the totality of circumstances herein discussed, we hold that taxpayer was entitled to rely on the IRS oral representation that the notice was withdrawn. The dismissal is reversed, and the case is remanded for proceedings on the merits of taxpayer's claim.
 
 
 17
 REVERSED AND REMANDED.
 
 
 18
 BISSELL, Circuit Judge, dissenting.
 
 
 19
 I am compelled to dissent. Although I sympathize with the taxpayer, the law in this case is clearly on the side of the Internal Revenue Service. I would affirm the decision of the Claims Court.
 
 
 20
 The facts are that Haber filed for an income tax refund for the 1970 and 1971 tax years. The IRS disallowed the claims. Haber's accountant negotiated with the IRS, and requested further administrative consideration of the refund claims. The two-year statute of limitations expired. The IRS issued a second notice of disallowance. Within two years of the second notice, Haber filed suit in the United States Claims Court.
 
 
 21
 The only evidence of the negotiations between Haber and the IRS during the initial two-year period is a declaration of Haber's accountant wherein he merely asserts that "auditors in Washington, D.C. and personnel in the Philadelphia IRS Service Center where foreign taxpayers file returns ... [led him] to believe that the notice, dated November 14, 1977, ... had been withdrawn and an extension granted so [he] could continue to pursue the matter on an administrative level."
 
 
 22
 Section 6532 of the Internal Revenue Code of 1954 (26 U.S.C.) provides in part:
 
 
 23
 (a) Suits by taxpayers for refund
 
 
 24
 (1) General rule No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun ... after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.
 
 
 25
 (2) Extension of time The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary.
 
 
 26
 ....
 
 
 27
 (4) Reconsideration after mailing of notice Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.
 
 
 28
 The legislative history of Sec. 6532 and the cases interpreting this section clearly mandate that for Haber to prevail, some formal action of the Internal Revenue Service must have tolled the statute of limitations within two years of the first notice. If there was not such an act, Haber's claim would have been barred when the two-year period ran in 1979. Once the limitations period begun by the first notice expired, the second notice in 1982 could not revive Haber's claim.
 
 
 29
 * Legislative History
 
 
 30
 Prior to the enactment of Sec. 6532 in its present form, the Internal Revenue Code had not fixed with precision the exact date on which the two-year limitation period for filing a tax refund suit began, nor how such period might be extended. See United States v. Borg-Warner Corp., 108 F.2d 424, 426-27 (7th Cir.1939). For example, under certain circumstances, continued (or renewed) administrative consideration of a previously rejected claim was held to extend the limitation period after an initial disallowance. Compare United States v. Gutzler, 105 F.2d 188 (9th Cir.1939) (refund suit held timely); with B. Altman & Co. v. United States, 40 F.2d 781 (Ct.Cl.1930) (refund suit held untimely). The degree of formality necessary to demonstrate a "reconsideration on the merits" was also in doubt. First National Bank of Chicago v. United States, 102 F.2d 907, 915 (7th Cir.), cert. denied, 307 U.S. 641, 59 S.Ct. 1038, 83 L.Ed.2d 1521 (1939). The resulting uncertainty led to considerable litigation. See H.R.Rep. No. 2818, 74th Cong., 2d Sess. 11 (1936). As noted in the Senate Committee Report, Congress amended the Internal Revenue Code specifically to eliminate that uncertainty, and to provide a definite date when the limitation period on refund suits would begin to run:
 
 
 31
 Under the existing law, the exact date of disallowance is sometimes difficult of ascertainment with the consequent uncertainty in such cases as to when the statute of limitations on suits begins to run.... Your committee is of the opinion that the best interests of all parties concerned will be served by an amendment which makes the date of disallowance of the claim absolutely certain in every case and which specifies but one limitation period after that date. Accordingly, the bill requires the mailing of a notice of disallowance by registered mail, and the bringing of a suit or proceeding within two years from the date of such mailing.
 
 
 32
 S.Rep. No. 665, 72nd Cong., 1st Sess. 57 (1932).
 
 II
 Formal Action
 
 33
 Once the limitation period on seeking a tax refund has expired, it cannot be revived. Tolerton & Warfield Co. v. United States, 285 F.2d 124, 124-25 (Ct.Cl.1961). The second notice in this case, mailed almost three years after the expiration of the statute of limitations, could not revive the expired limitation. Under these circumstances, Haber could only prevail if the first notice was defective such that it never became operative, Beardsley v. United States, 126 F.Supp. 775, 777 (D.Conn.1954), or if some formal act of the Internal Revenue Service tolled the statute of limitations within two years of the first notice. Southeast Bank of Orlando v. United States, 676 F.2d 660, 663-64, 230 Ct.Cl. 277 (1982); Miller v. United States, 500 F.2d 1007, 1010 (2d Cir.1974). Here there is no evidence that the first notice was invalid. Neither did the second notice issue until after the limitations period triggered by the first notice had expired. The government's concession that the Internal Revenue Service could orally withdraw a notice of disallowance is insufficient standing alone to make the first notice "defective," or to toll the statute.
 
 III
 Conclusion
 
 34
 The single averment on the part of Haber's representative that he was led "to believe that the notice ... had been withdrawn and that an extension had been granted" so that he "could continue to pursue the matter on an administrative level" falls far short of the evidence necessary to give rise to any inference of formal action on the part of the Internal Revenue Service. To conclude otherwise would have the effect of overcoming (1) the plain words of the statute; (2) the principle that the statute of limitations on tax actions must be narrowly construed, United States v. Michel, 282 U.S. 656, 658-60, 51 S.Ct. 284, 285, 75 L.Ed. 598 (1931); and (3) the principle that there can be no revival of a limitation period for an expired tax refund, Tolerton, 285 F.2d at 124-25. Such a conclusion would amount to estopping the government from asserting the statute of limitations. On these facts, however, there is insufficient evidence to support such a holding.
 
 
 35
 The majority opinion turns back the clock to 1936. The law on the limitations period for disallowed tax claims as it then existed is reflected in a 1936 House Report discussing a predecessor of Sec. 6532:
 
 
 36
 Under existing court decisions, there is so much uncertainty as to what constitutes reconsideration of a claim, that the Bureau of Internal Revenue is reluctant to take action with respect to a claim after it has once been disallowed, because of the fear that the case may be reopened indefinitely and thus result in further administrative expense with respect to such claim. It is felt that when the Bureau answers letters of inquiry and extends to taxpayers the courtesy of investigating into closed files, it should not be compelled to do so at the risk of indefinitely prolonging the period of limitations.
 
 
 37
 H.Rep. No. 2818, 74th Cong., 2d Sess. 11 (1936) (emphasis added), quoted in Southeast Bank, 676 F.2d at 664 n. 10.
 
 
 38
 For the foregoing reasons, I would affirm the judgment of the Claims Court.
 
 
 
 [1]
 26 U.S.C. Sec. 6511(d)(3)(A): Special period of limitation with respect to foreign taxes paid or accrued
 If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.
 
 
 [2]
 26 U.S.C. Sec. 6532(a)(2): The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary or his delegate