QANTAS AIRWAYS LIMITED,
Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–Appellant.

No. 94–5130.

United States Court of Appeals,
Federal Circuit.

Aug. 3, 1995.

---

David M. Ostrander, Cooper, White & Cooper, San Francisco, CA, argued, for plaintiff-appellee. With him on the brief, was John Mahoney.

Thomas J. Clark, Atty., Dept. of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief, were Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen and Bruce R. Ellisen, Attys. Of counsel, was Steven W. Parks.

Before ARCHER, Chief Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.

ARCHER, Chief Judge.

The United States appeals the judgment of the Court of Federal Claims awarding Qantas Airways Ltd. a refund of income taxes paid on certain rental and capital gains income received in the tax years ending March 31, 1983, 1984, and 1985. *Qantas Airways Ltd. v. United States,* 30 Fed.Cl. 851 (1994). We reverse and remand.

## BACKGROUND

Qantas is an Australian corporation that operates an international airline with scheduled flights throughout the world, including the United States. Qantas was wholly owned and actively controlled by the Australian government during the tax years at issue. Although Qantas operates as a separate commercial enterprise, all dividends and assets accrue to the Australian government in the event of the company's dissolution.

Qantas' "Americas Region" is comprised of North and South America. The headquarters for the Americas Region was in San Francisco, California, where Qantas owned an office building. Qantas only used three floors of the eleven floor building and leased out the remaining space in the building to other unrelated entities at market rates. During the tax years at issue Qantas received rental income from the leased office space.

Qantas also owned twenty-five houses in Millbrae, California, a suburb of San Francisco. Qantas purchased these single family residences in 1966 to house Australian citizens working for Qantas in the Americas

Region. As Qantas hired more American citizens, it had less need for the Millbrae houses. Thus Qantas decided to sell some of the Millbrae houses and to lease those houses that were not on the market at the time. During the tax years in question, Qantas sold eight of the Millbrae houses and thereby received capital gains income. From the leased Millbrae houses it received additional rental income.

Qantas filed income tax returns in the United States for the tax years ending March 31, 1983, 1984, and 1985, reporting a total tax liability of $1,843,439.22. The taxes were calculated on the rental income from the leased headquarters office space and the leased Millbrae houses and on the capital gains from the sale of eight of the Millbrae houses. Qantas later filed amended tax returns for the three years in question claiming that all of its income was exempt from taxation under 26 U.S.C. (I.R.C.) § 892 (1982), which exempted the United States income of foreign governments and international organizations from income tax. The Internal Revenue Service denied the claim for the first year and took no action on the claims for the second and third years. Qantas filed suit in the Court of Federal Claims seeking refunds of the income taxes it had paid for the three tax years at issue.

### I.

In the Court of Federal Claims, Qantas filed a summary judgment motion arguing that it was entitled to an exemption from income taxation under I.R.C. § 892 because it was a "foreign government" within the meaning of that statute. The court denied the motion, noting that Qantas "is not, in the usual sense, a foreign government. It is a commercial airline that sells its services to the general public." The court concluded that Qantas was a "controlled entity" of a foreign sovereign within the meaning of the applicable Treasury regulations interpreting I.R.C. § 892, but recognized that the regulations only exempted controlled entities "to the extent not engaged in commercial activities in the United States." Treas.Reg.

§ 1.892–1(b)(3) (1982). Thus, the Court of Federal Claims scheduled a trial to determine whether Qantas' income was exempt under the regulation.

Following the trial, the Court of Federal Claims issued a decision in favor of Qantas. Contrary to its summary judgment ruling, the court concluded that Qantas *did* qualify as a "foreign government" within the meaning of the statute, I.R.C. § 892. The court concluded that as a foreign government, all of Qantas' income from all sources was exempt from income taxation. The court reasoned that Treas.Reg. § 1.892–1 (1982) was inconsistent with the plain language, origin, and purpose of the controlling statute, and was invalid to the extent it purported to limit the sources of income covered by I.R.C. § 892's exemption. The government appealed.

### II.

We review issues of statutory interpretation under a de novo standard of review. *Kane v. United States*, 43 F.3d 1446, 1448 (Fed.Cir.1994). In reviewing trial court decisions interpreting the Internal Revenue Code, deference is accorded to the Secretary of the Treasury's interpretation of the Code. *Dow Corning Corp. v. United States*, 984 F.2d 416, 419 (Fed.Cir.1993). Our review of the Secretary's interpretation, as embodied in a Treasury regulation, is limited to the question of whether that interpretation is reasonable. *Id.* An interpretation that is plainly inconsistent with the underlying statute, however, is an unreasonable interpretation. *Id.*

I.R.C. § 892 during the tax years in question provided:

The income of foreign governments or international organizations received from investments in the United States in stocks, bonds, or other domestic securities, owned by such foreign governments or by international organizations, or from interest on deposits in banks of the United States of moneys belonging to such foreign governments or international organizations, or

from any other source within the United States, shall not be included in gross income and shall be exempt from taxation under this subtitle.

26 U.S.C. (I.R.C.) § 892 (1982).

■ Thus I.R.C. § 892 provided a broad exemption to "foreign governments or international organizations" from United States income taxation. That section, however, does not define a "foreign government" for purposes of this exemption, nor does any other applicable statutory provision give such a definition.

The history of I.R.C. § 892 also sheds little light on what Congress intended by using the term foreign governments. Section 892 had its origins in the War Revenue Act of 1917, ch. 63, § 1211, 40 Stat. 300, 336–337. The original version of the statute exempted foreign governments from income taxation on certain investment income earned in the United States but it did not define foreign governments. The statute was later modified in the Revenue Act of 1918, ch. 18, § 213(b)(5), 40 Stat. 1057, 1066 (1919), broadening the exemption by adding the statutory language regarding income "from any other source." No language was added to define foreign governments and nothing in the legislative history revealed any congressional intent on its meaning.

The statute was amended again in 1945, Act of December 29, 1945, ch. 652, § 4(a), 59 Stat. 669, 670, extending the § 892 exemption to international organizations as well as foreign governments. Nothing in the 1945 amendment or legislative history defined foreign governments, although the term international organization was defined. *See* I.R.C. § 7701(a)(18).

Congress made no further amendments to § 892 until 1986, after the tax years in question. Although the provision had been the subject of several I.R.S. rulings, it was not until 1980 that the Secretary issued a regulation interpreting the statute. That regulation, Treas.Reg. § 1.892–1, included the Secretary's definition of foreign governments for purposes of qualifying for the § 892 exemption:

(b) *Foreign government defined—(1) Classes of a foreign government.* For purposes of this section, a foreign government consists only of integral parts or controlled entities of a foreign sovereign to the extent not engaged in commercial activities in the United States.

Treas.Reg. § 1.892–1(b) (1982). This regulation interpreted foreign governments to include both "integral parts" and "controlled entities" of a foreign sovereign, but qualified the definition to include them only to the extent they were "not engaged in commercial activities in the United States." Integral parts and controlled entities are defined at § 1.892–1(b)(2) and (b)(3) respectively. It is not contested that Qantas is a controlled entity within the meaning of Treas.Reg. 1.892–1(b)(3) (1982).

■ We conclude the regulation is a reasonable interpretation of the statute. I.R.C. § 892 sets forth an exemption for foreign governments without ever expressly defining what one is. As there is no evidence that Congress intended any special definition for the term, it is proper to consider the term's ordinary meaning. The word "foreign," as used in this context, plainly means a sovereign nation other than the United States. The word "government" has several definitions, but among the most appropriate in this context is "the organization, machinery, or agency through which a political unit exercises authority and performs functions and which is usually classified according to the distribution of power within it." Webster's Third New International Dictionary 982 (G & C Merriam Co. 1971). Nothing in this definition suggests a corporation that exists solely to operate an international airline that competes with private ones, even if the airline corporation is owned and controlled by a foreign sovereign.

The Secretary, however, defined foreign governments in § 1.892–1(b) more broadly than the ordinary meaning would require. The regulation included controlled entities, such as a government-owned corporation,

within the statutory definition of foreign governments. But in the regulatory language the Secretary expressly limited the § 892 exemption only to controlled entities to the extent they are not engaged in commercial activities in the United States.

Qantas argues that once controlled entities were acknowledged to be within the statutory definition of foreign governments, I.R.C. § 892 foreclosed the Secretary from limiting the activities of controlled entities that would be considered exempt. We disagree. The statute does not require that controlled entities be covered within the meaning of foreign governments. When the Secretary defined foreign governments, he chose to include controlled entities but only to the extent they were not engaged in commercial activities in the United States. This limitation is a part of the Secretary's definition of controlled entities that may be deemed to be treated as a foreign government. We agree with the government that this limitation is reasonable under I.R.C. § 892. Accordingly, we sustain the validity of Treas.Reg. § 1.892–1 (1982) and reverse the decision of the Court of Federal Claims.

### III.

In its decision finding Treas.Reg. § 1.892–1 (1982) partially invalid, the Court of Federal Claims focused on the statutory language exempting income from foreign governments and international organizations "from any other source" from income taxation. The court reviewed the legislative history behind this language and concluded that:

> the 1918 Congress intended and subsequent bodies of Congress understood former section 892 to exempt from taxation *all* of the income earned by foreign governments within the United States, from whatever source. It is hornbook law that the Treasury has no power to promulgate a regulation which either adds an exception to or supplies an omission in a statute which it believes Congress should have

included but did not. *Commissioner v. Acker,* 361 U.S. 87, 91–92, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959). As such, the portions of Treas.Reg. § 1.892 which restricted the tax exemption of foreign governments to income from investment sources were not sustainable as a valid interpretation of the statutory language in effect during the years at issue in this case.

30 Fed.Cl. at 862.

The flaw in the court's analysis is that it assumes that Qantas is a foreign government within the meaning of the statute in all respects. As explained above, in interpreting the statute, the Secretary chose to include controlled entities, like Qantas, within the definition of foreign governments only to the extent that they were not engaged in commercial activities in the United States. In other words, to the extent controlled entities are engaged in commercial activities in the United States, they are not treated as a part of a foreign government within the meaning of I.R.C. § 892.

We recognize the Secretary's regulation may, in its effect, limit sources of excepted income by defining what entities qualify for the statutory exemption. However, the regulation is a reasonable interpretation of the statute because nothing in the statutory language compelled the Secretary to include controlled entities within the definition of foreign governments in the first instance. Presumably the Secretary viewed the noncommercial activities of controlled entities as being closely aligned to the usual functions of government and concluded any income they produced should be exempted from taxation.

### CONCLUSION

The Court of Federal Claims erred in ruling that Qantas was entitled to a refund under I.R.C. § 892 merely because it was a controlled entity as defined in Treas.Reg. § 1.892–1 (1982), notwithstanding the fact it

**390**

may have been engaged in commercial activities in the United States. The Treasury regulation is a reasonable interpretation of I.R.C. § 892. Accordingly, we reverse and remand for a determination of whether Qantas' activities in the United States are commercial activities under Treas.Reg. § 1.892–1.[1]

### REVERSED and REMANDED.

---

1. We express no opinion on whether the "any other source" language in I.R.C. § 892 is limited to investment sources and, if so, whether Qantas' leasing and sales of real estate qualify as such. These issues should be considered in the first instance by the Court of Federal Claims if it determines that Qantas is not engaged in commercial activities in the United States and, therefore, may be treated as a foreign government under I.R.C. § 892 and the regulations thereunder.