**RHI HOLDINGS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

### No. 95–827T.

United States Court of Federal Claims.

May 2, 1997.

---

Roy Harry Crosley, the Fairchild Corporation, Chantilly, VA, for plaintiff RHI Holdings, Inc.

Jennifer Dover Sprigs, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

HODGES, Judge.

This tax refund case comes before the court on cross-motions for summary judgment. IRS determined that plaintiff was liable for certain corporate tax underpayments in 1990. It began accruing interest against the amount of the alleged underpayment at an increased interest rate (known as "hot interest") effective January 1, 1991. IRC § 6621(c). Plaintiff paid the assessment with interest in 1993. It sues now for refund of the hot interest accrued prior to September 30, 1991. Defendant argues that plaintiff's suit is barred by the applicable statute of limitations.

## FACTS

IRS audited plaintiff's predecessor corporations in February 1990 for tax years 1983–84, and proposed deficiencies exceeding $100,000 for each year.[1] IRS's Examiner's Office issued a "30–day" action letter and Revenue Agent Report to plaintiff on March 2, 1990. These materials required plaintiff to decide within 30 days whether it intended to pay the deficiency or appeal the proposal with IRS's Office of Appeals. Plaintiff sought administrative review, so its file was transferred to the Office of Appeals. Appeals apparently lacked sufficient information to consider the protest. it transferred plaintiff's materials to the Examiner's office for further development in February 1991. Meanwhile, the interest rate on plaintiff's tax underpayment had increased by two percent on January 1, 1991. IRC § 6621(c).

The Examiner's office issued a supplemental Revenue Agent Report on August 30, 1991. The Report reduced plaintiff's tax exposure and reduced or eliminated prior penalties. Plaintiff met with the Office of Appeals, settled the protest, and paid the Government in January 1993, with interest.

In April 1993, plaintiff filed Form 843, "Claim for Refund and Request for Abatement," for the tax years in dispute. Plaintiff also filed Form 2297, "Waiver of Statutory Notification of Claim Disallowance," for the same periods. Form 2297 contains the following language:

> I understand that the filing of this waiver is irrevocable and it will begin the 2–year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

IRS Richmond issued a proposed disallowance of plaintiff's claim for an abatement of interest on June 17, 1993. The letter stated that plaintiff's claim had been examined, that the IRS proposed full disallowance, and that if plaintiff did not accept the findings it could request a conference with the Office of Appeals. The letter enclosed a new Form 2297

---

1. Plaintiff is the successor corporation to Rexnord Inc. and Clausing Corporation. It executed forms and protested assessments for each company throughout the administrative process. This Opinion and Order treats plaintiff as if it had been audited and assessed alone.

to be executed by plaintiff. IRS gave plaintiff 30 days to respond.

Plaintiff responded June 23, 1993 requesting a conference with the Appeals Office. IRS Philadelphia wrote plaintiff on June 29 asking whether the claim was a request for interest abatement or a refund claim. Attached to the letter was IRS' complete file containing plaintiff's original Form 843 claim form and plaintiff's original Form 2297 waiver form. The claim form was date stamped "Received 4–27–93" by IRS. The waiver form was not stamped "Received", but it contained plaintiff's original signature.

Plaintiff wrote to an Appeals Officer on August 13, 1993 requesting clarification of the June 29 letter from the Philadelphia office. The letter did not mention that plaintiff's original Form 2297 had been returned. The record does not establish that plaintiff received a written response.

IRS sent plaintiff a letter in December 1993 disallowing its claim for abatement of interest. The letter did not refer to a claim for refund or inform plaintiff of a limitation on the time for filing suit.

Plaintiff filed suit on December 15, 1995. This was more than two years after it waived notification of claim disallowance, but less than two years after IRS disallowed plaintiff's abatement of interest claim.

## DISCUSSION

### I.

One issue in this case is whether plaintiff's complaint was timely even though it was filed more than two years after plaintiff executed a waiver of notice of claim disallowance. The other is whether "hot interest" on alleged corporate tax underpayments properly began to accrue on January 1, 1991. More specifically, the second issue is whether Treas. Reg. § 301.6621–3(c)(6) impermissibly omits administrative review of the taxpayer's protest as a precondition to the application of "hot interest."

### A.  Timeliness

Normally, a taxpayer has two years after the mailing of a notice of claim disallowance to challenge IRS in court. IRC § 6532(a)(1). However, if the taxpayer elects to sign a Form 2297, "Waiver of Statutory Notification of Claim Disallowance," the two-year limitations period begins the day the waiver is filed. IRC § 6532(a)(3). Claimant filed Form 2297 on April 27, 1993. It filed suit more than two years later on December 15, 1995. IRS' handling of plaintiff's case during the intervening period may have confused the taxpayer, however, and plaintiff contends that IRS should be estopped from attempting to enforce the waiver.

Two months after plaintiff filed a waiver and claim form, IRS returned to plaintiff its entire file, including the original executed Form 2297. Plaintiff sought an explanation from the Office of Appeals without success. If the return of plaintiff's file was an affirmative misrepresentation, this raises a factual issue of whether plaintiff reasonably interpreted IRS' action to have voided the waiver.[2] We do not address this issue further,

---

**2.** Defendant argues that courts have nullified waivers only in extreme circumstances that do not apply here. Typical of such cases is *Miller v. United States*, 500 F.2d 1007 (2d Cir.1974), where a Form 2297 waiver was voided because IRS mistakenly issued a notice of claim disallowance providing the taxpayer two years from the date of mailing to file suit. *See also Exchange & Savings Bank of Berlin v. United States*, 226 F.Supp. 56, 58 (D.Md.1964) (same). The Court of Claims drew extensively from this authority in *Southeast Bank of Orlando v. United States*, 230 Ct.Cl. 277, 676 F.2d 660 (1982), to void the statute of limitations when a "corrected" notice of claim disallowance mailed to plaintiff improperly granted the taxpayer additional time to file suit. There, the court observed that "the time for filing should be extended when the claimant is understandably confused by a second notice of disallowance, and acts reasonably." *Id.* at 283–84, 676 F.2d 660.

Defendant notes that IRS did not mail a misleading notice of claim disallowance to plaintiff. Plaintiff argues that it became confused when IRS returned its entire file two months after executing claim and waiver forms. It sought an explanation to no avail and reasonably assumed that the waiver had been nullified, according to plaintiff.

A key principle identified in *Southeast Bank* is that when the taxpayer is reasonably confused by government action and unsuccessfully solicits clarification, the statute of limitations cannot bar suit. It may have been reasonable for the taxpayer here to conclude that its waiver had become a nullity.

however, because plaintiff cannot prevail on the merits.

## B.  Hot Interest

In general, when a taxable subchapter C corporation underpays tax for any taxable year by more than $100,000, interest on the underpayment will be increased by two percent after the applicable date. IRC § 6621(c).[3] The "applicable date" is the 30th day after the earlier of (1) the date on which the first letter of proposed deficiency allowing the taxpayer an opportunity for administrative review is sent; or (2) the date on which a notice of deficiency is sent. IRC § 6621(c)(2)(A). Section § 6621(c) governs interest for periods after December 31, 1990 regardless of the taxable period to which the underlying tax may relate. Treas. Reg. § 301.6621–3(c)(1). A letter of proposed deficiency must be disregarded for purposes of determining the applicable date if the letter is distributed to the wrong taxpayer or for the wrong taxable period. Treas. Reg. § 301.6621–3(c)(6).

Defendant issued a letter of proposed deficiency to plaintiff on March 2, 1990. IRS charged hot interest beginning January 1, 1991. A supplemental Revenue Agent Report was issued on August 30, 1991. The Office of Appeals considered claimant's protest and met with plaintiff. Plaintiff paid the deficiency plus interest, and sued for a refund.

Plaintiff does not dispute that it owed hot interest; it disputes when that increased rate began to accrue. Claimant argues that the "applicable date" under § 6621(c)(2)(A) is September 30, 1991 because the "first letter of proposed deficiency which allow[ed] the taxpayer an opportunity for administrative review" was not issued until August 30, 1991.

Because Appeals refused to review plaintiff's claim until after IRS issued a supplemental Revenue Agent Report in August 1991, plaintiff argues that the March 1990 letter of proposed deficiency should be disregarded for purposes of determining the "applicable date". That letter did not allow plaintiff an opportunity for administrative review, according to plaintiff.

Defendant argues that issuance of a supplemental audit report does not affect the determination of the "applicable date." According to the statute, that date is the 30th day after the first letter of proposed deficiency allowing the taxpayer an opportunity for administrative review is sent. The only exceptions to this rule are when the letter is distributed to the wrong taxpayer, or for the wrong tax year.

> A letter of proposed deficiency will be disregarded for purposes of determining the applicable date if the letter of proposed deficiency is issued as a result of an administrative error either to the wrong taxpayer or for the wrong taxable period.

Treas. Reg. § 301.6621–3(c)(6).

Plaintiff counters that the regulation is invalid because it ignores the plain language of the statute requiring administrative review before hot interest can be applied. *See supra* note 3. Specifically, the regulation does not list failure to conduct an administrative review as a reason to disregard the letter of notification for purposes of determining the applicable date. The regulation impermissibly omits administrative review as a precondition to the application of hot interest, according to plaintiff.

The Government contends that the regulation is reasonable and consistent with the

**3.** § 6621. DETERMINATION OF RATE OF INTEREST.

. . . .

   (c) INCREASE IN UNDERPAYMENT RATE FOR LARGE CORPORATE UNDERPAYMENT.—
   (1) *In general.*—For purposes of determining the amount of interest payable under section 6601 on any large corporate underpayment for periods after the applicable date, paragraph (2) of subsection (a) shall be applied by substituting "5 percentage points" for "3 percentage points".

   (2) *Applicable rate.*—For purposes of this subsection—
   (A) *In general.*—The applicable date is the 30th day after the earlier of—
   (i) the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent, or
   (ii) the date on which deficiency notice under section 6212 is sent.

intent of Congress. IRS dealt specifically with the "applicable date" issue when it promulgated Treas. Reg. § 301.6621–3(c)(6), and stated the following:

Congress intended that a taxpayer receive notification from the Service, and have a limited opportunity to pay the tax before the section 6621(c) rate becomes applicable. However, a 30–day letter need not raise every potential issue or adjustment for the taxable year before the section 6621(c) rate becomes applicable. *The statute is also clear that Appeals review is not a precondition to the application of section 6621(c)* because the applicable date may be determined by reference to a 90–day letter if the Service elects not to issue a 30–day letter. Moreover, to postpone the applicable date until all issues are fully developed by the Examination function of the Service may provide taxpayers with an incentive not to cooperate with Examination prior to the time the case is forwarded to Appeals. Thus, the final regulations do not adopt this suggestion.

T.D. 8447, 1992–2 C.B. 313 (emphasis added). Defendant's interpretation holds that the only preconditions to application of hot interest are passage of 30 days and issuance of a notice of proposed deficiency that *allows* an administrative review, not mandates one. The statute does not require the Office of Appeals to consider the protest before hot interest applies, defendant claims. It is sufficient if Appeals *may* review the protest after issuance of the 30–day letter.

## II.

### A.

Treas. Reg. § 301.6621–3(c)(6) was promulgated pursuant to IRS's general rulemaking powers under IRC § 7805. Treasury regulations will not be invalidated unless unreasonable and plainly inconsistent with revenue statutes, and will not be overruled except for weighty reasons. *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698–99, 92 L.Ed. 831 (1948). Courts must defer to regulations that implement congressional intent in a reasonable manner. *Commissioner of Internal Revenue v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045–46, 67 L.Ed.2d 140 (1981); *Qantas Airways Ltd. v. United States*, 62 F.3d 385, 387 (Fed.Cir. 1995).

According to plaintiff, Treas. Reg. § 301.6621–3(c)(6) conflicts with the clear language of § 6621(c) because of what the regulation does not say. It does not say that the deficiency letter should be nullified for purposes of determining the applicable date when the Office of Appeals does not conduct an administrative review of the taxpayer's protest. Plaintiff claims that the regulation is invalid because it is inconsistent with the statute, which requires the Office of Appeals to conduct an administrative review before the applicable date can be determined.

### B.

Determination of the applicable date is conditioned on passage of 30 days and delivery of a letter of proposed deficiency. The statute allows the taxpayer an *opportunity* for administrative review. It does not require administrative review.

Treas. Reg. § 301.6621–3(c)(6) limits the operation of § 6621(c) by requiring that the deficiency letter be mailed to the proper taxpayer and that it address the appropriate taxable period. Those requirements are not inconsistent with IRC § 6621(c)(2). The regulation does not require administrative review to trigger the application of hot interest, but neither does the statute.

Treas. Reg. § 301.6621–3(c)(6) reasonably interprets IRC § 6621(c)(2). The applicable date may be determined by reference to the distribution of a 90–day letter if IRS chooses not to issue a 30–day letter. No opportunity for appeal is required upon issuance of the 90–day letter. Thus, it is reasonable to conclude that Congress did not intend to require administrative review before assessing hot interest.

Subsection § 6621(c)(2) triggers determination of the applicable date upon issuance of the *first* letter of proposed deficiency. Therefore, Congress must have been aware that IRS periodically issues more than one letter or report according to the circumstances. Subsequent letters or reports do

not affect determination of the applicable date. The first letter, sent in 1990, determined the applicable date, not the second Revenue Agent Report adjusting plaintiff's proposed liabilities.

We do not discern a "weighty reason" to overrule the regulation at issue here. The regulatory process is reasonable because it provides the taxpayer with an incentive to cooperate with IRS examination officials and to forward the file to the Office of Appeals promptly. Without a firm deadline to begin the application of hot interest, the taxpayer may be inclined to avoid it by delaying preparation for administrative review.

### CONCLUSION

IRC § 6621(c)(2)(A)(i) states that "hot interest" applies to large corporate tax underpayments 30 days after IRS issues a letter of proposed deficiency allowing the taxpayer an opportunity for administrative review with IRS Office of Appeals. Treas. Reg. § 301.6621–3(c)(6) states that the deficiency letter may be disregarded for purposes of determining the applicable date only if the letter is sent to the wrong taxpayer or for the wrong taxable period. This regulation is neither unreasonable nor inconsistent with the statute. The deficiency letter issued to plaintiff in March 1990 was sent to the correct taxpayer and for the appropriate taxable periods. Hot interest properly began to apply on January 1, 1991.

Defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. No costs.

IT IS SO ORDERED.