### UNITED STATES v. BORG–WARNER CORPORATION.

No. 6984.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1939.

---

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and S. Dee Hanson, Sp. Assts. to Atty. Gen., and William J. Campbell, U. S. Atty., and David L. Bazelon, Asst. U. S. Atty., both of Chicago, Ill., for appellant.

Irvin H. Fathchild, of Chicago, Ill., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The Borg-Warner Corporation brought this suit against the United States in the District Court to recover overpayments of income taxes for the years 1921 and 1922. The appellant admitted overpayment for the years in question but opposed recovering upon the ground that the statutory period prescribed for bringing the suit had expired. The District Court, trying the case without a jury, gave judgment in favor of the appellee, and an appeal therefrom brings the case here.

Section 3226 of the Revised Statutes, as amended and as it applies to this suit, prescribes that suits to recover taxes must be instituted within five years after the amount sought to be recovered was paid or within two years after the claim for refund upon which the suit is based is disallowed by the Commissioner of Internal Revenue. Section 1113(a) of the Revenue Act of 1926, 44 Stat. 116; 26 U.S.C. §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673. In order to recover, the taxpayer is required to observe the conditions so stated and under which the sovereign has authorized suit against it.

The facts show, and counsel for the appellant so admits, that the refund claims [1] dated December 24, 1926, and January 8, 1927 were timely filed with the Commissioner of Internal Revenue. However, the instant case was commenced February 5, 1935, so it is certain that it was not begun within the five years period prescribed by the statute above. Therefore, if the taxpayer is entitled to recover, it is upon the theory that its suit was instituted within two years after the disallowance of the claim.

---

[1] On August 22, 1929 the taxpayer also filed more detailed claims for the same years here in question. Counsel for Government devotes some time to these 1929 claims and shows that they were not filed within the limitation period prescribed by the statute.

This showing is not material, since it is clear that the taxpayer bases its action on the 1926 and 1927 claims. Counsel for taxpayer explains that the 1929 claims were filed in response to T.D. 4265 and 4266, which required greater detail in specifying the grounds or bases for the refund. T.D. 4265, 4266; Cum.Bull. VIII-1, pp. 110-112; approved March 27, 1929.

The suit in the District Court was instituted less than two years after a letter of the Commissioner of April 11, 1933, disallowing the taxpayer's claims for refund. If this were all the evidence in the case,[2] there could be no doubt. But the appellant, relying on letters of the Commissioner dated April 21, 1927 and June 2, 1927 which purport to reject the claims in question, insists that the two years limitations period had expired prior to the institution of the suit.

■■ It is true that once the time within which suit may be brought on a disallowed refund claim has run out, it cannot be revived. Nor has the Commissioner power to waive the statute of limitations. United States v. Garbutt Oil Co., 302 U.S. 528, 534, 58 S.Ct. 37, 82 L.Ed. 518. The question here, however, is this: when does the limitation period begin to run? The applicable statute refers to the date of the disallowance. And, of course, the disallowance referred to here means the final disallowance of the claim by the Commissioner. American Safety Razor Corp. v. United States, Ct.Cl., 6 F.Supp. 293, 295, certiorari denied 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 692; McKesson & Robbins v. Edwards, 2 Cir., 57 F.2d 147, 149.

At this time, it would be interesting to note the changes that have since been made in the statute governing this case, i. e., Section 3226 of the Revised Statutes as amended by the Revenue Act of 1926. We do this in order to emphasize the uncertainty that existed in cases dealing with the statute in question, as to when the two year period on suits began to run. To be sure, we realize that otherwise the changes now briefly mentioned, not being retroactive, do not affect our case.

---

2 A summary of the facts and their chronological sequence follows:
1. Background.
 1920. Taxpayer takes patent depreciation deduction.
 Commissioner challenges deduction and asserts tax deficiency in 1926.
 1921, 1922. Taxpayer does not take deductions.
 1923, 1924. Deduction taken. Deficiency asserted.
2. Taxes here involved.
 1921 tax. Final installment paid December 12, 1922.
 1922 tax. Final installment paid December 14, 1923.
3. Proceeding before Board of Tax Appeals.
 1926. Commissioner asserted deficiencies in 1920, 1923 and 1924 taxes.
 1927. Taxpayer appeals to Board. Issue: Right and amount to deduct for patent depreciation.
4. Refund Claims.
 December 24, 1926. Tax refund claim for 1921 filed.
 January 8, 1927. Tax refund claim for 1922 filed.
 These claims, "protective" refund claims, were filed "to protect taxpayer in event of an allowance (by the Board of Tax Appeals) in 1920 for a valuation for patents for depreciation purposes."
5. The 1927 rejections.
 April 21, 1927. The 1921 claim rejected.
 June 2, 1927. The 1922 claim rejected.
6. The 1929 Refund Claims.
 August 22, 1929. Taxpayer filed more detailed refund claims for the years 1921 and 1922, in response to T. D. 4265 and 4266 requiring greater detail in specifying claims.
7. Departmental Practice.
 Where at the time of filing the claim the identical basis upon which the claim was predicated was undergoing scrutiny by the Board of Tax Appeals, it was the departmental practice to refrain from taking final action until disposition of the Board case, or to take action subject to reopening thereof upon the Board decision in favor of the taxpayer.
8. Board of Tax Appeals decision.
 1927–1931. Case pending before the Board. November 30, 1931: The depreciation deduction held to be proper. March 19, 1932: Official acquiescence therein by Commissioner.
9. Correspondence in 1932 and 1933, and what it shows.
 Commissioner's attitude toward claims prior to April 11, 1933.
 During the pending Board decision, he treated claims as pending for ultimate adjustment of tax liability. After the Board case, he proceeded to adjust tax liability for 1921 and 1922, and so advised taxpayer.
 Commissioner's right-about face on April 11, 1933.
 April 11, 1933. He rejects claim. Reason:
 T. D. 4325.
 May 7, 1934. He rejects claim. Reason:
 T. D. 4325 and Section 608 of Revenue Act of 1928.
10. Suit started in District Court February 5, 1935.

Today, the date when the two year period begins is definitely fixed as the date of mailing of a notice of rejection by registered mail by the Commissioner. Section 3226 of the Revised Statutes, as amended by Section 1103(a) of the Revenue Act of 1932, 26 U.S.C. §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673. The reasons for the 1932 change are explained by the legislators in this way: "Under the existing law (the law governing this case), the exact date of disallowance is sometimes difficult of ascertainment with the consequent uncertainty in such cases as to when the statute of limitations on suits begins to run." Finance Comm. Rep. No. 665, 72nd Cong., 1st Sess., p. 57.

■ Prior to the 1932 amendment, that is, under the statute and law governing our situation, complicated questions of fact often arose, as do in the instant case, as to the date of the final disallowance of the refund claim. American Safety Razor case, supra; McKesson & Robbins case, supra; Pacific Mills v. Nichols, 1 Cir., 72 F.2d 103. Southwestern Oil & Gas Co. v. United States, D.C., 29 F.2d 404, certiorari denied 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646. And, under the statute and law applicable to this case, we know that so long as the refund claim is under consideration by the Commissioner, it has not been finally disallowed. Mobile Drug Co. v. United States, D.C., 39 F.2d 940, 941; American Safety Razor case, supra; cf. Heebner v. United States, D.C., 50 F.2d 904.

In connection herewith, it is noted that the 1936 change in the statute here in question provides that "any consideration, reconsideration, or action by the Commissioner * * * following the mailing of a notice by registered mail of disallowance" shall not extend the period within which suit may be begun. Section 3226 of the Revised Statutes, as amended by Section 807(a) of the Revenue Act of 1936, 26 U. S.C. §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673.

■ In this case, therefore, the problem is to determine the date of the Commissioner's final action on the claims in question, which, at the most, presents a question of fact to be determined from all the circumstances. In this connection it is pertinent to remember that the District Court, sitting without a jury, found for the appellee a result which on appeal shall not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ The action of the Commissioner in 1927 was in form final and, unless qualified by the circumstances, the case ends. However, we think, as did the District Court, that the other facts require a different conclusion. As the record shows, the claims in question were based on the right of the taxpayer to deduct a certain amount in 1921 and 1922 for patent depreciation. This same right to make a deduction had been contested by the Commissioner in 1920.

It thus happened that the identical question (the right and amount to deduct) was put in issue and at the time (1926 and 1927) was before the Board of Tax Appeals concerning the tax years of 1920, 1923, and 1924. Consequently, the taxpayer's refund claims, and the proper disposition thereof, depended on the outcome of the Board proceedings.

Under these conditions, the taxpayer filed refund claims which notified the Commissioner that the claims were filed "to protect taxpayer in event of an allowance on 1920 for a valuation for patents for depreciation purposes." Now, in the years 1926 and 1927, it was the established practice of the Treasury Department, in the consideration and disposition of such refund claims, to regard them as pending, subject to adjustment and refund if the pending case to which they referred terminated favorably to the taxpayer. T.D. 3240, 5 Cum.Bull. 313 (1921).[3]

As stated by counsel for the appellant in his brief, "it is clear upon the instant

[3] On May 29, 1928, Sec. 608 of the Revenue Act of 1928 was enacted, and it was made applicable to claims disallowed after May 29, 1928. 26 U.S.C. § 1674, 26 U.S.C.A. § 1674. It provided that the statute of limitations could be tolled during a pending Board of Tax Appeals case, but only upon written agreement between taxpayer and Commissioner.

On October 23, 1928, the Treasury Department approved T.D. 4235, which recognized Sec. 608 above and announced the revocation of T.D. 3240. T.D. 4235, VII-2 Cum.Bull. 76. It provided that as to claims disallowed prior to May 29, 1928 the statute of limitations could be tolled during a pending Board case, but only upon application on or before January 31, 1929.

record that the Commissioner of Internal Revenue treated the refund claims for the years 1921 and 1922 as pending for ultimate adjustment of the tax liability after the decision of the Board of Tax Appeals. * * *" To us, such a record compels the conclusion that the Commissioner's action in 1927 was not intended, nor was it so understood by taxpayer or Commissioner, to be the final action in the matter. Other facts, briefly mentioned below, also give weight to this conclusion.

For instance, the files for the 1921 and 1922 taxes were not closed, but instead were transferred to the office of the General Counsel for the Bureau of Internal Revenue, in connection with the Board of Tax Appeals proceedings which terminated in 1931 in favor of the taxpayer. Moreover, in 1929 the taxpayer, in response to a Treasury Decision requiring greater detail in specifying refund claims, filed more detailed claims which were accepted by the Commissioner. T.D. 4265-4266; VIII-1 Cum.Bull. 110 (1929). These facts support the inference that the Commissioner had not taken his final action in 1927.

To be noted, too, is the correspondence following the Board's decision in 1931. The interchange of letters between taxpayer and Commissioner indicate clearly that the Commissioner was in 1932 proceeding to adjust the tax liability for the years 1921 and 1922, and the taxpayer was so advised. As stated by counsel for the appellant, "following the decision of the Board * * * he proceeded to adjust the tax liability for the years 1920 and subsequent years, including the years 1921 and 1922, and advised the taxpayer that adjustments were being made, including the adjustment for the years 1921 and 1922."

Then, on April 11, 1933, of a sudden, the Commissioner made the surprising discovery that the adjustment of the tax liability for the years 1921 and 1922 was mere uselessness, because he had really rejected the claims back in 1927 and the limitation period had long since expired.[4] Needless to say, we can not appreciate the Commissioner's change of face in 1933, and in saying this we are not unmindful that the statute of limitations is to give protection against stale demands.

The facts as related lead strongly to one conclusion, namely, that the refund claims in question, admittedly filed in time, had been under continual consideration from their filing date in 1926 and 1927 to at least April 11, 1933. Moreover, this construction of the facts also avoids an extremely unfair result. The plaintiff had every reason for believing that its claims, which in fact were under consideration at least until April 11, 1933, had not been finally rejected before, and evidently it acted on that understanding, for it sued within two years thereafter.

The Government relies heavily on our decision in First Nat. Bank of Chicago v. United States, 7 Cir., 102 F.2d 907. We need only say that the two cases are clearly distinguishable. We conclude that in the circumstances here nobody acquainted with all the facts could have hesitated to believe that the claims had not been finally rejected before April 11, 1933. We hold, therefore, that the limitation did not begin to run before that day, and consequently the judgment of the District Court is affirmed.

Affirmed.

---

[4] The Commissioner relies on Section 608 of the Revenue Act of 1928 and T.D. 4235 for his change of face. See f. n. 3. Clearly Section 608 is not applicable to the instant case. Nor is T.D. 4235. See Watts v. United States, 2 Cir., 82 F.2d 266, 268; United States ex rel. Botany Worsted Mills v. Helvering, Commissioner, 67 App.D.C. 104, 89 F.2d 848, 852; cf. Heebner v. United States, D.C., 50 F.2d 904. Even if applicable, T.D. 4235 would be satisfied by the facts in the instant case.

On the other hand, Section 608 and T.

D. 4235 is consistent with, and to us seems to emphasize, the position taken in our opinion, that is, that prior to May 29, 1928 (effective date of Section 608) the rejection of claims filed under the conditions described in the instant case was not understood and treated as the Commissioner's final action thereon, but that the claims were nevertheless kept open and under actual consideration by the Department at least until after the outcome of the pending Board of Tax Appeals case.