**Heinz HABER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 532–84T.**

United States Claims Court.

July 3, 1989.

E.O.C. Ord, San Francisco, Cal., for plaintiff.

Steven I. Frahm, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## OPINION

NETTESHEIM, Judge.

This case before the court after trial on remand involves the applicability of a ten-year statute of limitations to the entitlement claimed by plaintiff Heinz Haber ("plaintiff")[1] to a foreign tax credit for the years 1970 and 1971 and the effect to be given a second notice disallowing plaintiff's claims. *See Haber v. United States*, 8 Cl.Ct. 371 (1985), *rev'd and remanded*, 831 F.2d 1051 (Fed.Cir.1987), *reh'g denied*, 846 F.2d 1379 (Fed.Cir.1988).

## BACKGROUND

In 1985 defendant moved to dismiss the complaint as time barred, since the notice of disallowance issued more than two years before the action was commenced. Plaintiff opposed, contending that, in telephone conversations with his accountant Hans Lasker, unidentified Internal Revenue Service ("IRS") employees had withdrawn the first notice of disallowance and that a later issued notice of disallowance was operative. Finding Mr. Lasker's declaration insufficient, even according him all the inferences and presumptions to which Mr. Lasker was entitled as plaintiff's declarant in opposition to a motion to dismiss, this court concluded that the complaint was barred by the statute of limitations, pursuant to I.R.C. § 6532(a), in that the case was not filed within two years of the original notice of disallowance. *Haber*, 8 Cl.Ct. at 376.

On appeal the Federal Circuit held that plaintiff had presented sufficient averments to preclude dismissal, framing the issue as "whether the taxpayer was entitled to rely on the oral statement by the Service that the 1977 notice was withdrawn." *Haber*, 831 F.2d at 1052, 1054. The appeals court pointed to the fact that defendant did not attempt to contradict Mr. Lasker's assertion in his declaration that the notice of disallowance had been withdrawn orally. *Id.* at 1052. Second, the Federal Circuit ruled that the 1982 notice of disallowance created an inference that the first notice had been withdrawn, since defendant presented no other reason why the second notice would have been sent. *Id.* The Court also ruled that the destruction of the IRS files was unjustified: "The government [cannot] prevail on unsupported arguments that could be defeated by information reasonably expected to be contained in its destroyed files." *Id.* at 1053.

Defendant's first motion for rehearing sought clarification of the Federal Circuit's decision. In granting the motion to the extent of striking from its principal opinion language covering the IRS' policy on oral withdrawals of notices of disallowance, the court stated:

> In deciding the motion the Claims Court appropriately drew all factual inferences in favor of the non-movant, and thus the premise of the Claims Court's decision, and of our reversal thereof, was the non-movant's factual position. We held that on all the circumstances oral withdrawal had been established and taxpayer Haber was entitled to rely thereon.

*Haber*, 846 F.2d at 1380 (footnote omitted). A second motion for rehearing was denied.

█ The case was tried pursuant to the October 17, 1988 mandate of the Federal Circuit remanding the case. At trial plaintiff is no longer entitled to the benefit of all factual inferences and presumptions being resolved in his favor. Plaintiff bears the burden of proof in establishing his entitle-

---

1. All activities attributed to by plaintiff were performed on his behalf by Hans Lasker, plaintiff's accountant.

ment, *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), including establishing that the Claims Court has jurisdiction. *Diamond v. United States,* 228 Ct.Cl. 493, 498, 657 F.2d 1194, 1197 (1981), *cert. denied,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 69 (1982).

■ The court cannot proceed to the merits of plaintiff's claim until jurisdiction is established. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988). As Chief Justice Chase wrote over 100 years ago in *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 514–15, 19 L.Ed. 264 (1869):

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is [the] power to declare the law, and when it ceases to exist, the only function remaining to the Court is that of announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle....
>
> ... [J]udicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer.

■ It is this court's obligation to follow faithfully appellate instructions on remand. However, in this case the court was handicapped because the parties could not agree on what the court was supposed to do. Plaintiff contended that the Federal Circuit has resolved in his favor the issue of whether the IRS withdrew the first notice of disallowance. Plaintiff pointed to the following language of the Federal Circuit's order on rehearing that restated the holding of the principal opinion: "We held that on all the circumstances oral withdrawal had been established and taxpayer Haber was entitled to rely thereon." *Haber,* 846 F.2d at 1380 (footnote omitted). Defendant pointed to the following language of the Federal Circuit's order on rehearing as instructing a trial on the issue:

> The government now seeks verification from this court of its right to litigate the underlying factual premises, including further evidence, discovery, and trial. Haber responds that all available evidence was before the Claims Court,

pointing to the government's destruction of its files. Our decision on the law does not bar the government from seeking to adduce further evidence before the Claims Court, in accordance with usual procedures appurtenant to remand following reversal. However, it is the responsibility and authority of the Claims Court to determine the extent and to manage the detail of such proceedings. *Id.*

The court cannot treat the Federal Circuit's remand as a useless act. The appeals court was aware that defendant already had acquiesced in *Hart* and the other Court of Claims case applying the ten-year statute of limitations to a claim for a foreign tax credit. Plaintiff's claim fell within the ten-year statute, and defendant conceded the underlying entitlement. This court is of the view that plaintiff's position that the IRS withdrew the first notice of disallowance was established for purposes of avoiding defendant's motion to dismiss, but not definitively established for purposes of trial. It is for the court to determine, based upon the evidence presented, whether plaintiff has met his burden of proof to establish jurisdiction in the Claims Court. Defendant is not precluded from presenting evidence that has the effect of undermining plaintiff's assertion that a withdrawal took place. The court must make findings regarding the likelihood of the events transpiring, as each party claims, based upon the facts adduced at trial.

### FACTS AND DISCUSSION

Mr. Lasker, a certified public accountant (C.P.A.) since 1954, who at the time was senior partner with the firm of Lasker, Kim & Co., timely filed plaintiff's federal income tax returns for the years 1970 and 1971. On June 8, 1977, plaintiff filed with the IRS Philadelphia Service Center, Philadelphia, Pennsylvania ("the Philadelphia Service Center"), a Form 1040X, claiming entitlement to a refund for a surplus of foreign tax credits to be carried back to 1970 and 1971 from the year 1972. *See* 26 U.S.C. ("I.R.C.") § 6511(d)(3)(A) (1976).

Accompanying plaintiff's claim was a transmittal letter addressed to D. Edmonds requesting a return copy. Plaintiff claimed refunds of $21,338.00 for 1970 and $17,059 for 1971. On November 14, 1977, a legal notice of disallowance of plaintiff's claims was sent to plaintiff via certified mail. The notice stated that plaintiff's claims were disallowed because "the claim is filed more than 3 years after the return was filed or 2 years after the tax was paid...." The notice advised plaintiff of the IRS procedures for challenging the denial:

> If you wish to bring suit or proceedings for the recovery of any tax, penalties, or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or the United States Court of Claims. The law permits you to do this within 2 years from the mailing date of this letter.

The notice provided a name and telephone number for plaintiff to call with any questions. The notice also contained a reference number identifying the service center, the unit, and the tax examiner. Ms. Helen Russell's tax examiner number was given.

Mr. Lasker replied to the notice of disallowance on January 10, 1978, utilizing the reference number. Mr. Lasker's letter, addressed to the Director of the Philadelphia Service Center, stated in full:

> I am in receipt of your letter dated November 14, 1977 denying a claim for income tax refund for the years indicated. The reason given is that the claim was filed more than three years after the returns were filed or two years after the taxes were paid[,] whichever is longer.
>
> Taxpayer believes that under Code Section 65–11(d)(3) and the regulations he is entitled to a 10 year statute of limitations. Therefore, he is protesting this decision and I would like to know whether this code section has been considered in reaching the decision as shown.
>
> My power of attorney is on file with your department.
>
> As a matter of information I would like to point out that the telephone number given in your letter of November 14, 1977 put me in contact with a person who, while trying to be helpful, had no actual knowledge of this case and was not in a position to given specific information that would be designed to make this letter unnecessary.

In response to Mr. Lasker's letter, on April 27, 1988, Ms. Russell, the tax examiner in the Adjustments Branch of the Philadelphia Service Center identified by the reference number in the disallowance and in Mr. Lasker's letter, sent a letter reiterating the reason for the disallowance of plaintiff's claim. The handwritten letter stated, in pertinent part:

> The ten year statute of limitation[s] is available only to increase a credit already taken on the return. Since the 1970 and 1971 returns claimed no foreign tax credit, this credit has been disallowed.

This letter also provided plaintiff with Ms. Russell's telephone number.

A period of 18 months passed during which time there was no written correspondence between plaintiff and the Philadelphia Service Center. On November 1, 1979, 12 days before the two-year statute of limitations was due to expire, Mr. Lasker sent another letter to the Director of the Philadelphia Service Center referring to the November 14, 1977 notice of disallowance. Again, Mr. Lasker included the reference number. He inquired whether there would be a change in position by the IRS in light of the decision in *Hart v. United States*, 218 Ct.Cl. 212, 585 F.2d 1025 (1978). The letter read in full:

> I am writing to you under power of attorney for Professor Dr. Heinz Haber. The power of attorney is in your files.
>
> I refer to your letter disallowing claims for a refund of Foreign Tax Credit to the years 1970 and 1971, on the basis of the application of a three year statute of limitations.
>
> Please [be] advise[d] as soon as possible whether the decision in the case of Robert L. Hart v. United States, Court of Claims No. 74–77, 585 F2d 1025, would change your decision as to the disallowance of the claim. In particular, would it

be necessary to bring suit or proceedings for recovery in a court of the United States, or is it possible to reopen the case by direct negotiations with you.

In view of this late date, please let me have your answer as soon as possible.

In June 1982 plaintiff's case was examined by Mr. David Stewart of the IRS Office of International Operations in the Washington, D.C. Service Center (the "OIO"). Mr. Stewart researched plaintiff's claim, but ultimately concluded that the IRS would hold to its position that a three-year statute of limitations applied. On June 25, 1982, the OIO sent plaintiff a proposed notice of disallowance. The second page of the notice contained the following handwritten comments:

We must continue to follow Treasury Regulation 1.901–1(d) which prevents filing a claim for foreign tax credit adjustment from 1972 to your 1970 return after the three [year] statute of limitation period for the 1972 return. The regulation has not been rescinded, nor has the Commissioner acquiesced [in] any of the following Court of Claims cases....

The proposed notice listed three Court of Claims cases, including *Hart*. The proposed notice attached a Form 2297 (Waiver of Statutory Notification of Claim Disallowance) and a Form 3363 (Acceptance of Proposed Disallowance of Claim for Refund or Credit).

On October 26, 1982, a formal notice of disallowance (the "second notice") was sent by the Director of the OIO. Again, D. Stewart was listed as plaintiff's contact person, and his telephone number was supplied. The letter was similar to the first notice of disallowance, stating that plaintiff must bring suit within two years, and providing a telephone number for plaintiff to contact with questions. Plaintiff filed suit in the Claims Court on October 17, 1984, within two years of the second notice of disallowance.

 The determinative issue is whether plaintiff can prove by a preponderance of evidence that the IRS orally withdrew its 1977 notice of disallowance. A subsidiary issue is whether the person or persons

at the Philadelphia Service Center or at the OIO with whom Mr. Lasker allegedly spoke had the authority to withdraw the notice of disallowance. Finally, it is plaintiff's burden to establish that the second notice of disallowance derived from a reconsideration or a continuing consideration of his claim. The fact that a second notice was sent is not of itself sufficient. *Southeast Bank of Orlando v. United States*, 230 Ct.Cl. 277, 284, 676 F.2d 660, 664 (1982).

The court's analysis of the case proceeds on two tracks following the guidelines set forth in the Federal Circuit's principal opinion and order on rehearing: 1) whether plaintiff's claim of reliance is based on a "reasonable belief" that there had been a withdrawal of the notice of disallowance; 2) if there was no oral withdrawal, whether plaintiff reasonably could rely on the second notice of disallowance; and, if so, whether the second notice should be construed as a formal reconsideration of plaintiff's claims, which would start the statute of limitations running anew, thereby rendering timely plaintiff's claims before this court. As part of this consideration, the court must determine whether the second notice of disallowance standing alone may be construed as a sufficient basis for plaintiff's claim of reliance.

### 1. *Withdrawl of first notice of disallowance*

Plaintiff requests that the court presume in his favor two findings of fact: first, that Mr. Lasker spoke with an individual or individuals, whose identities are not known at present, at the Philadelphia Service Center or at the OIO, who informed Mr. Lasker that the original notice of disallowance had been withdrawn; second, that the person or persons to whom Mr. Lasker spoke were in a position of authority, so that plaintiff reasonably could rely on the advice. The court cannot make these presumptions in plaintiff's favor unless plaintiff initially meets his burden of proof on these issues and defendant presents no evidence refuting plaintiff's assertions. The court found the trial to be illuminating on this point. Mr. Lasker may have been con-

vinced that he had received an oral withdrawal, but no objective evidence supported this view. Mr. Lasker himself was unclear concerning to which office he spoke and what exactly was said. However, what he does remember is inconsistent with his assertion that an oral withdrawal was made. Aside from the fact that a second notice of disallowance issued, the court finds plaintiff's proposed scenario completely unsupported. Defendant, although it did not have the burden of demonstrating what transpired, presented the more plausible scenario.

Plaintiff's case was completely dependent upon Mr. Lasker's testimony. Mr. Lasker, currently a consultant, was formerly a senior partner in his accounting firm. He is a member of the American Institute of Public Accountants and the California Society of Certified Public Accountants. Mr. Lasker received his law degree from Southwestern University Law School, but was not admitted to practice law. Mr. Lasker explained his continuous dealings with the IRS. He testified that he filed claims for refunds of the same type involved in this suit every year between 1970 and 1980 and was successful except as to these claims. Because of these claims—including the claims for 1970 and 1971—Mr. Lasker asserts that he was in continuous communication both with the Philadelphia Service Center and the OIO. Mr. Lasker explained his customary practice. He would file the claims for refund, then follow with telephone calls. He testified that he also received telephone calls from both IRS Service Centers and "developed a certain relationship with these people [sic] they relied on my statements, and I relied on theirs."

The Philadelphia Service Center on June 8, 1977, received plaintiff's refund claims for the years 1970 and 1971. Mr. Lasker testified that he received a return letter from the Philadelphia Service Center on October 6, 1977, referring to plaintiff's claims. On November 14, 1977, the first notice of disallowance for the years 1970 and 1971 was mailed to plaintiff. Mr. Lasker testified that he understood this notice required plaintiff to file suit within two years, unless he could demonstrate with new evidence that the decision was incorrect. Mr. Lasker advised plaintiff that he was required to bring suit within two years.

In response to the notice of disallowance, Mr. Lasker stated that he immediately telephoned the person listed on the notice. He also maintains that he made a number of other telephone calls concerning the notice. He testified that it was difficult to remember because of the passage of time any names, specific telephone calls, or the words that were used. However, he did recall having "numerous" telephone conversations with personnel from the both the Philadelphia Service Center and the OIO. According to Mr. Lasker, during one or several of these telephone conversations, "I was led to believe that the disallowance notice had been withdrawn." He believes that he was also encouraged to argue his case on an administrative level and advised that his claim was being reconsidered. Mr. Lasker thought he would receive a written notice of the IRS' final decision.

On January 10, 1978, Mr. Lasker sent a letter addressed to the Director of the Philadelphia Service Center. The letter asserts that a ten-year, rather than a three-year, statute of limitations should apply to the filing of plaintiff's claims. The letter states that plaintiff had contacted the number contained on the notice of disallowance which, according to Mr. Lasker's letter, "put me in contact with a person who, while trying to be helpful, had no actual knowledge of this case and was not in a position to give specific information that would be designed to make the letter unnecessary." The letter fails to mention the fact that Mr. Lasker had contacted someone telephonically who informed him that the disallowance had been withdrawn. Mr. Lasker also argued in his letter the application of the incorrect statute of limitations, even though Mr. Lasker testified that due to his oral conversations, this very matter was already under consideration.

In response Ms. Russell sent plaintiff a letter dated April 27, 1978, reaffirming that plaintiff's claim had been disallowed.

There is no mention of any withdrawal of the notice or any indication of a course of dealing by telephone with Ms. Russell.[2] Mr. Lasker testified that he attempted to contact the number provided on Ms. Russell's letter to assert an error in the IRS' decision, but is unsure whether she is the person with whom he spoke.

On November 1, 1979, Mr. Lasker sent a second letter addressed to the Director of the Philadelphia Service Center. In this letter he refers to the first notice of disallowance, asking whether the decision of the Court of Claims in the *Hart* case would change the IRS' position. Mr. Lasker inquired whether it would be necessary to file suit, or whether he might reopen the case through direct negotiations. Again, there is no mention that the notice had been withdrawn. In fact, the letter on its face is inconsistent with plaintiff's position. It is not indicative of continued discussions with IRS personnel, nor does it support Mr. Lasker's testimony that after the oral withdrawal of the notice he was merely awaiting a final decision. Mr. Lasker during trial attempted to explain the reason why he was concerned with the date in his letter. He emphasized that he was afraid that the ten-year statute of limitations would run on plaintiff's 1970 claim and that he was not referring to the two-year statute of limitations. Mr. Lasker asserted that he did not refer to the withdrawal notice in his letter because the issue already had been resolved. Mr. Lasker testified that his only concern in this letter was with the year 1970, since in light of the admission in Ms. Russell's letter, the 1971 claim should have been allowed and he was seeking to expand a credit that already existed. Mr. Lasker did not testify that he communicated this contention to Ms. Russell or anyone else at the Philadelphia Service Center or the OIO. He also explained that his letter was a response to the stalled conversations. It was an attempt to reopen the matter for a final resolution. Mr.

Lasker remembers that he received a written communication within two weeks of his letter and thereafter had a continuing dialogue with the Philadelphia Service Center and the OIO.

On June 25, 1982, the OIO sent Mr. Lasker a letter proposing a disallowance of plaintiff's claim for 1970. The letter was responsive to Mr. Lasker's November 1, 1979 letter. Mr. Lasker requested a hearing. On October 26, 1982, the OIO sent Mr. Lasker a statutory notice of disallowance for the year 1970. Mr. Lasker expressed the view that the second notice of disallowance confirmed his impression that the original notice of disallowance had been withdrawn.

Mr. Lasker explained his methodology for keeping track of his billings for individual clients. He testified that he would make calendar entries to record the time spent and the name of the client. He billed on a yearly basis for "services rendered, including preparation of the income tax return." There was very little detail about individual activities performed on behalf of a particular client.

On cross-examination defendant elicited testimony that Mr. Lasker was unfamiliar with notices of disallowance. Mr. Lasker's only experience was the two he received in connection with this case. He testified that he had been successful with all his claims for refund except these two claims. Mr. Lasker stated that he understood a notice of disallowance meant that he would have to advise his client to bring suit within two years. However, Mr. Lasker testified that he had been led to believe by IRS personnel, on at least two occasions by telephone, that the first notice of disallowance had been withdrawn and that on more than one occasion he was assured orally that he would not have to file suit within two years. He was unsure whether he spoke with the same person during the two conversations. He does not remember the name or names or job titles or job descrip-

**2.** The IRS may have been incorrect regarding the basis of denial of plaintiff's claims, which defendant concedes. However, the court cannot reach the merits of the claim unless jurisdiction is established. *Johns–Manville Corp. v.*

*United States,* 855 F.2d 1571, 1572 (Fed.Cir. 1988) (per curiam) (merits opinion vacated when Federal Circuit affirms earlier certified order finding lack of subject matter jurisdiction).

tions of any personnel with whom he spoke.

When pressed to name a single person, Mr. Lasker stated that he spoke with a person named "Edmonds," but could not recall whether it was a "Ms." or "Mr." When asked to identify the person who made the oral withdrawal and which office, Mr. Lasker responded: "It was in Philadelphia and Office of International Operations in Washington, see I was in constant contact with these offices in this and other cases." He continued: "[F]or this client, I had a number of refund claims running, and I talked to many people in many times on this and other years—for this and other years."

Defendant attempted to focus Mr. Lasker on his conversations with the OIO during the years 1977 to 1979 concerning this matter. Mr. Lasker admitted that during this period the OIO was not conducting an audit for the years 1970 and 1971. However, he testified the OIO telephoned him first. He was unable to name the person who called.

Mr. Lasker testified that he did not seek written confirmation of the oral withdrawal, because the person or persons to whom he spoke gave assurances that the IRS was considering plaintiff's claims. He believed that he would receive a final notice later. He did not provide plaintiff with written notice of the withdrawal, nor did he write a memorandum to the file or note recording the event. Mr. Lasker made no handwritten notes during any of his telephone conversations with IRS personnel. He did not testify that when he called the Philadelphia Service Center or the OIO that he knew that the person with whom he spoke was authorized to withdraw the notice. In fact, Mr. Lasker kept no contemporaneous records of the activities he performed on behalf of his clients, other than recording the time he spent on a calendar. He did retain copies of exchange of correspondence with the IRS.

Defendant attempted to impeach Mr. Lasker's trial testimony that he had received oral assurances that the notice of disallowance was withdrawn by using Mr. Lasker's recent deposition testimony to establish inconsistencies. Mr. Lasker in deposition explained the basis upon which he believed the notice had been withdrawn:

Q. Do you remember anything specific that you were told by the Internal Revenue Service that caused you to reach the conclusions that you reached in that affidavit?

A. Definitely. As a matter of fact, I cannot say who it was anymore, because as I said, different persons answered the telephone. But they definitely said that we could pursue this matter on the administrative level, and that this would not be—it would not necessary to file suit.

Deposition of Hans Lasker, Jan. 26, 1989, at 20. Defendant pointed out that defense counsel gave Mr. Lasker numerous opportunities during his deposition to testify to the facts and circumstances of the oral withdrawal, between pages 20 and 33, but Mr. Lasker spoke only about the merits of plaintiff's claim.

 Plaintiff bears a substantial burden in attempting to assert an estoppel against the Government. *Heckler v. United States*, 467 U.S. 51, 61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Plaintiff must produce sufficient evidence to carry his claim. Plaintiff's case rests on Mr. Lasker's assertion that there was an oral withdrawal of the notice of disallowance shortly after the notice was received by plaintiff. In determining the veracity of this assertion, the court begins with the premise that Mr. Lasker's "alleged reliance on advice given to him by the IRS is undermined to the extent that the advice was oral." *Henry v. United States*, 870 F.2d 634, 637 (Fed.Cir.1989) (citations omitted); *see also Boraiko v. United States*, 146 Ct.Cl. 814, 817 (1959) (on summary judgment motions, plaintiff's testimony concerning unidentified officer should not have been admitted as incompetent).

 A review of Mr. Lasker's testimony serves to undermine substantially plaintiff's claim. Mr. Lasker's belief that there was an oral withdrawal is not supported by any underlying documentation. Mr. Lask-

er's testimony does not support a finding that there actually was an oral withdrawal by an authorized IRS representative. Plaintiff cannot claim that he was prejudiced by either the passage of time nor by any missing documents that would support his position. The trial revealed that Mr. Lasker kept no contemporaneous documentation of his telephone conversations; he did not prepare any memos or notes to the file; and he did not send anything to the IRS to memorialize his conversations. He did not record the names of persons with whom he spoke, nor did he follow the conversations with any letters. Mr. Lasker failed to memorialize any of his dealings with the IRS, even though he maintains that he was asserting claims for other tax years to different IRS personnel. This undermines Mr. Lasker's assertion that he received the particular tax advice that he claims in this particular matter. It was unreasonable for Mr. Lasker to assume that the person or persons who allegedly made the oral withdrawal would create a record of the conversation so Mr. Lasker would not have to. Mr. Lasker's lack of specificity about what was said to him, coupled with this course of dealing, make it unlikely that he would have remembered with whom he spoke even a short time after the events. Certainly, Mr. Lasker should have been put on notice by Ms. Russell's April 27, 1978 memorandum that the IRS was not conceding any withdrawal of the notice of disallowance. Yet, Mr. Lasker did not respond for 18 months.

Mr. Lasker's assertion that he received assurances that the notice was withdrawn from both the Philadelphia Service Center and the OIO also lacks credibility. The court finds it unfathomable that two IRS offices orally told plaintiff that a notice of disallowance had been withdrawn. A single oral withdrawal is an exceptional event. It would be highly unusual for two offices to make the same mistake, especially when there was no activity in the OIO which would cause it to be involved with plaintiff's claims. During cross-examination Mr. Lasker stated that the OIO called him concerning his claim between 1977 and 1979. This not only contradicts his earlier testimony, but also seems unlikely, since there was nothing pending before the OIO. The court does not question Mr. Lasker's integrity, but does question his perception of what transpired. Mr. Lasker's reconstituted memory is insufficient to task defendant with the burden of explaining why the IRS sent the second notice of disallowance. Mr. Lasker as a professional had an obligation to keep some records in order to face possible contingencies that might arise. Had even the minimally customary record keeping taken place, defendant could be held responsible if Mr. Lasker destroyed or misplaced records. But Mr. Lasker charted his own course to rely exclusively on his memory. The consequences of this choice cannot be blamed on the IRS. That the IRS has no records of telephone conversations with Mr. Lasker does not help plaintiff's case or permit the court to discount the vagueness of Mr. Lasker's recollections, since a taxpayer bears the burden of supplying enough competent evidence to shift the burden to the IRS.[3]

Mr. Lasker's lack of records is also inconsistent with his otherwise careful dealings with the IRS. Mr. Lasker testified, and he offered several exhibits demonstrating, that when he made submissions to the IRS, he would send two copies, requesting that one be stamped and returned. Plaintiff's correspondence with the IRS does not support a finding of an oral withdrawal. Plaintiff's attempt to demonstrate that the exchange of correspondence was consistent with the oral withdrawal of the notice of disallowance completely fails. In fact, a contrary finding is demanded.

The January 10, 1978 letter—sent after Mr. Lasker claims that he had received oral

---

3. Plaintiff contended at trial that during argument on appeal the panel emphasized the fact that the IRS waited until defendant's 1985 motion to dismiss to alert plaintiff that it did not consider the original notice to have been been withdrawn and that, consequently, Mr. Lasker should not be faulted for an imprecise recollection approximately seven years (the date of his declaration) after the event. The appellate argument was not transcribed; however, the appeals court made no ruling a point that would cause this court not to make its own findings.

notice of withdrawal of the disallowance and assurances that he was not required to file suit—addressing the November 14, 1977 notice of disallowance is inconsistent with his testimony. Plaintiff argued in this letter that the ten-year statute of limitations should apply to his claim and inquired whether this had been considered in the IRS' decision. Additionally, plaintiff states that the person whose telephone number was provided, gave "no specific information" which would have made the letter "unnecessary." The language of this letter contradicts Mr. Lasker's assertion that he had developed "a relationship" of reliance with personnel at the IRS Service Centers and that plaintiff's claim already was under consideration. Ms. Russell's response was not indicative of a continuing dialogue with plaintiff. The memorandum merely sought to answer the issue raised in Mr. Lasker's letter and to restate the IRS' position. Mr. Lasker claimed that he did not respond immediately to Ms. Russell's letter in writing because his continuing dialogue with the IRS made it unnecessary. He is sure that he telephoned the number she provided plaintiff, yet is unsure if he spoke with her.

Plaintiff allowed 18 months to elapse after receiving Ms. Russell's letter before he had any written correspondence with the IRS. On November 1, 1979, 12 days before the expiration of the two-year statute of limitations, plaintiff, arguing a Court of Claims case, sought to reopen the matter. Plaintiff does not purport to be supplying new information which would aid in a claim already under consideration. It was the IRS' responding to Mr. Lasker's letter that ultimately prompted the second notice of disallowance.

The court finds, based upon the facts of record, that plaintiff has failed to meet his burden of proof in establishing that there was an oral withdrawal of the notice of disallowance. Mr. Lasker's lapse in memory, if any exists, and the lack of recordation cannot be resolved against defendant, since plaintiff has not demonstrated that he was prejudiced due to the passage of time. Plaintiff has not shown that any IRS records existed that could have helped his case. The complete IRS file for 1970 was in evidence. The file contained nothing supporting plaintiff's assertion of an oral withdrawal. The only missing IRS records were the return and amended return for 1971. The mere possibility that there may have been an annotation benefitting plaintiff's scenario must be measured against the substantial documentation for 1970, which contained no such information. Since this claim was treated together with 1971, it cannot serve to meet plaintiff's burden.

■ Defendant argued that it was entitled to a presumption of regularity in the Service Centers. The defense witnesses were helpful in deciphering the codes on exhibits. Since these witnesses were not directly involved with plaintiff's claims, they could not establish that customary procedures were followed in plaintiff's case. The court found the witnesses knowledgeable regarding how plaintiff's claims should have been processed and relies on their testimony to interpret documentary evidence, but makes no other findings based on their testimony.

Defendant in its case-in-chief attempted to undermine plaintiff's assertion that he had received an oral withdrawal of the notice of disallowance from persons with whom he spoke at the Philadelphia Service Center and the OIO. Defendant called several witnesses who were longterm employees of the Philadelphia Service Center to explain IRS procedures.[4]

---

4. On November 16, 1988, the court entered an order pursuant to RUSCC 77.1 expediting proceeding on remand due to the age of the case. Trial was scheduled by order entered on March 3, 1989, to begin on April 25, 1989. Defendant was allowed to add new witnesses in early April, provided they were produced for deposition before trial. On April 12, 1989, the court refused defendant permission to add David Stewart, the OIO tax examiner who issued the second notice of disallowance. Even though the Federal Circuit expressed interest in the IRS's explanation of why the notice issued, the court could not permit defendant, over plaintiff's objection, to identify this witness at such a late date.

Katherine L. Durfor, a tax examiner in the Technical Section of the Philadelphia Service Center, testified that she has been employed by the IRS for 22 years. She spent 12 years in the Adjustments Branch processing taxpayers' claims for refund and answering inquiries from taxpayers concerning notices they received. Ms. Durfor provided background on how a Form 1040X is processed after entering the Philadelphia Service Center. According to Ms. Durfor, the form first goes to Receipt and Control, where mail is opened, sorted, and transferred to the proper area of authority in the Service Center. Payments are also processed. She testified that Receipt and Control does not accept telephone inquiries or generate any files.

The next step in the process involves assignment to the Statute Unit. The Statute Unit's function is to check the transcript of the account to determine the timeliness of forms or claims. The Statute Unit also determines the amounts refunds or assessments. According to Ms. Durfor, if a claim involved a carryback credit the Statute Unit would make no ruling. The witness testified that no determination had been made on plaintiff's claim by the Statute Unit based upon the notation to that effect on plaintiff's Form 1040X, which, she stated, was a customary note placed on forms when no determination is made. Once the Statute Unit made a determination, it would not field telephone calls.

Ms. Durfor explained that the Adjustments Branch processed claims for refunds, answered questions about notices, and handled general inquiries. She stated that cases are assigned in batches to an individual tax examiner who would answer specific taxpayer inquiries, including questions about notices of disallowance. The Adjustments Branch was authorized to make determinations on claims for refund. However, if a claim raised a foreign tax issue, it would automatically be transferred to the Classification Unit. If the Classification Unit allowed or disallowed a claim, the claim was sent back to the Adjustments Branch for final action. If a foreign tax claim was selected for audit, it would be sent to the OIO in Washington, D.C. Ms.

Durfor testified that she was generally familiar with the type of letter the OIO sent on December 1, 1972, signifying that the OIO had conducted an audit of plaintiff's 1970 return and accepted it for filing. She stated that once the letter was sent, the OIO's jurisdiction would end.

Ms. Durfor also interpreted for the court the 1970 IRS National Computer Center transcript of plaintiff's account. She was familiar with the transcripts and the various transaction codes contained thereon. The witness explained that the audit indicator code was 420, which revealed that plaintiff's transcript had no audit pending between 1977–1979. She also testified that code 421 signaled conclusion of an audit. An audit indicator number also appears on plaintiff's transcript June 14, 1982, with the closing indicator on December 13, 1982. Ms. Durfor stated that the OIO would retain no files if it were not conducting an audit. Therefore, it was unlikely that for the years 1977 to 1979 the OIO would be in a position to answer plaintiff's questions about his 1970 return.

Ms. Durfor testified that each Form 1040X that arrives at the Adjustments Branch is assigned to an individual tax examiner. This tax examiner answers all subsequent inquiries by the taxpayer. She explained that each tax examiner is provided with a number and that the exchange of correspondence between plaintiff and the Philadelphia Service Center carried the number of tax examiner Helen Russell. Ms. Durfor stated that once a claim was assigned, all inquiries would be handled by the same tax examiner until that person's retirement.

Ms. Durfor explained that the telephone number contained on the first notice of disallowance was a general number intended to put the taxpayer in touch with the Contact Unit. The Contact Unit's job is to provide general information and to advise the taxpayer to write in with specific inquiries. The Contact Unit had no decision-making authority. It could transfer calls to the Adjustments Branch only if the assigned tax examiner was available. Plaintiff's first notice of disallowance contained

Ms. Russell's tax examiner number. She also noted that "D. Edmonds" named in plaintiff's notice of disallowance was Doris Edmonds, Supervisor of the Contact Unit during the period in question. Her name was placed on all letters sent. However, members of her staff would handle telephone inquiries. Ms. Durfor expressed the view that the response plaintiff received from his telephone inquiry was indicative of the type of information the Contact Unit provides—helpful, but not specific.

Ms. Durfor testified that if a taxpayer wanted a notice of disallowance reevaluated, he would have to make a written request. She stated that a tax examiner would retain no information about a taxpayer's claim, but would be required to retrieve the information whenever a specific inquiry was made. Upon a written inquiry, two to three weeks were required to retrieve a taxpayer's file. Ms. Durfor testified that a tax examiner could not retrieve a file other than in response to a written request. Tax examiners were to return the files once an inquiry was answered. Ms. Durfor pointed out that plaintiff's January 10, 1978 letter contained a notation on the bottom righthand corner indicating that Helen Russell had received the letter and responded by writing a "Q-note" on April 27, 1978. This conclusion is consistent with the evidence.

Ms. Durfor noted that it was customary to make notations of telephone conversations if the examiner had the case file open before them. However, if an examiner received a telephone call and did not have the file, no record would be made. Returns were stored by document location numbers ("DLN") and had to be reconstituted whenever inquiries were made. Ms. Durfor testified that a review of the 1971 transcript revealed that the file only consisted of the return and the amended return. She explained that it was IRS procedure to discard the documents seven years after action has been taken.

Ms. Durfor testified that IRS procedures required that someone respond to plaintiff's November 1, 1979 letter. She stated that Ms. Russell should have responded unless she had retired by that date. Ms. Durfor identified that the stamp on the bottom of plaintiff's Form 1040X signified it had been selected for audit on May 28, 1980, by Classifier Number 17. She testified that Classifier Number 17 was William Prye.

Defense witness Shirley Pollitt was also an employee at the Philadelphia Service Center. She has been employed there for 20 years and currently holds the position of Section Manager in the Adjustments–Correspondence Branch. During the period concerned, Ms. Pollitt was a tax examiner in the Adjustments Branch. The court found Ms. Pollitt to be a thoroughly professional individual who was very familiar with procedures at the Philadelphia Service Center. Ms. Pollitt agreed with Ms. Durfor's assertion that a single examiner would handle a taxpayer's case until retirement, including any telephone inquiries. She testified that in order for a tax examiner to consider a claim for adjustment, an inquiry would have to be made in writing. Ms. Pollitt testified that the examiners sometimes sought guidance from the classifiers regarding a taxpayer's claim, but that the classifiers did not answer telephone inquiries from taxpayers.

The final defense witness was Enrico Angradi, also an employee at the Philadelphia Service Center. Mr. Angradi testified that he has been employed there for 23 years and is at present a Manager in the Examination Branch, which is part of the Classification Unit. He has been with the Classification Unit since 1974. Mr. Angradi stated that during the years 1977 to 1979, Mr. Prye would have handled any issues involving foreign income. Mr. Angradi noted that the classifiers would only answer telephone calls from taxpayers during tax season. The classifiers would not field telephone requests for adjustments. He testified that if a person were contesting a notice of disallowance, the person's claim automatically would be sent to the OIO for audit. He explained: "In other words, if it was something that would need further research, maybe extensive research, we are required to select it and sent it in to the district office." According to

this witness, when the OIO was conducting an audit, it dealt directly with the taxpayer. Mr. Angradi reiterated the testimony of the other defense witnesses that he was unaware of any procedure for withdrawing a notice of disallowance.[5]

During plaintiff's rebuttal case, his counsel asked Mr. Lasker if he was ever told by anyone at the Philadelphia Service Center or the OIO to communicate in writing. Mr. Lasker maintained that he had not been told to write in and was not referred to the OIO. Mr. Lasker also testified that he requested a conference in an August 6, 1982 letter to the OIO. On cross-examination, defendant introduced an August 16, 1982 letter from the OIO to plaintiff, informing him that the IRS could not honor his request to meet in Los Angeles, but that he could go to Washington, D.C. Mr. Lasker testified that he never received this letter.

### 2. Effect of second notice of disallowance

 In order to prevent defendant from asserting the applicability of the two-year statute of limitations, plaintiff must show that he acted in reliance on the IRS' actions and that his reliance was reasonable. *Miller v. United States,* 500 F.2d 1007, 1011 (2d Cir.1974). The court must determine after reviewing the totality of the circumstances whether

> a second notice (a formal disallowance) creates sufficient uncertainty so that the claimant reasonably believes that the statute of limitations is to begin running from the date of the second notice then the defendant is equitably estopped from arguing a bar due to the statute of limitations.

*Southeast Bank of Orlando v. United States,* 230 Ct.Cl. 277, 283, 676 F.2d 660, 663–64 (1982). Although the Federal Circuit in *Haber* ruled that a second notice of disallowance sent outside the limitations period does not of itself preclude a finding of estoppel, the time period must be considered as a factor in considering the reasonableness of plaintiff's reliance.

 In order to estop defendant from asserting the two-year statute of limitations based upon the original notice of disallowance, the court must determine whether it can "reasonably view the second disallowance as incorporating a reconsideration of the ... claim previously rejected." *Southeast Bank,* 230 Ct.Cl. at 280, 676 F.2d at 662. The question becomes whether the taxpayer reasonably could believe that his claim has formally been reconsidered, thereby starting a new limitations period running. However, the taxpayer cannot extend the statute of limitations by filing a second claim on grounds substantially similar to those used in the first claim. *See Southeast Bank,* 230 Ct.Cl. at 284, 676 F.2d at 664 (citing *Einsom–Freeman Co. v. Corwin,* 112 F.2d 683 (2d Cir.), *cert. denied,* 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 44 (1940)). A new claim founded on the same grounds does not extend the statute of limitations. *B. Altman Co. v. United States,* 69 Ct.Cl. 721, 727, 40 F.2d 781, 784, *cert. denied,* 282 U.S. 863, 51 S.Ct. 36, 75 L.Ed. 763 (1930).

 Plaintiff argued that the second notice of disallowance was a confirmation of his position that there had been an oral withdrawal of the first notice. Plaintiff's tautological argument that Mr. Lasker stated that he was expecting some notification after the oral withdrawal and the second notice fulfilled his expectation does not comport with the circumstances surrounding the second notice. As was discussed previously, the record does not support a finding that the notice was withdrawn orally. Plaintiff argued that it was defendant's dilatoriness in raising the statute of limitations issue which caused a lack of more specific information that would have enabled plaintiff to establish his case. Plaintiff's contention that defendant is at fault for delays in this matter is unfounded. No prejudice with regard to plaintiff's memory can rest with defendant. Plaintiff's failure to memorialize his dealings with the IRS does not shift the burden. Defendant could not have acted proximate

---

**5.** This is not to say that a court cannot deem a notice of disallowance withdrawn.

enough to the events for Mr. Lasker's memory to have been of assistance. Mr. Lasker claims to have engaged in an on-going dialogue with IRS personnel as late as in 1982, but he still could not recall any names during trial or previously in his 1985 declaration. In addition, Mr. Lasker, after receiving Ms. Russell's reiteration of the disallowance of his claim, waited 18 months before asking the IRS to reopen the matter. Even after receiving a second notice of disallowance denying plaintiff's claim on the same basis as the first notice, plaintiff waited until October 17, 1984—nine days before the second statute of limitations period was to expire—to file suit. Plaintiff's casual approach to his claim cannot form the basis for an argument that plaintiff was prejudiced by delay.

Plaintiff also wants the court to impose an adverse inference on defendant due to the loss of the 1971 file. However, it is plaintiff's burden to establish that information contained on these returns could have benefitted his case. This plaintiff has failed to do. A review of the 1970 returns reveals that although there were notations made on the returns, they dealt primarily with the routing of documents and the recordation of official actions taken, but not the underlying substance of these actions.

The fact that a second notice of disallowance was sent is disturbing to the court. However, the event alone cannot create an inference that plaintiff acted reasonably, if he otherwise had not. It is clear from the evidence that plaintiff's November 1, 1979 letter prompted the audit of his claim.

The notes of auditor D. Stewart state that his review was in response to the letter from Mr. Lasker. *See supra* note 4. Mr. Stewart does not state that he is taking action on the claim because of a prior withdrawal of a notice. Instead, his notes indicate that the audit was prompted by a referral from the Philadelphia Service Center's Classification Unit. This is consistent with the notation on plaintiff's 1970 amended income tax return, by classifier Prye, that plaintiff was being selected for an audit. Plaintiff should not be rewarded by the fact that the IRS responded to his claim

at this late date, since a reasonable person would have taken action by filing suit at an earlier date.

Mr. Lasker's testimony that he was concerned with the running of the ten-year statute when he wrote his November 1, 1979 letter is contrary to the plain language in the letter, and it would require the court to make an unreasonable assumption concerning what a C.P.A. should know. The three- versus ten-year statute of limitations problem only applied to the filing of a claim. A claim had already been filed. Mr. Lasker recognized that a claim existed in his letter. The plain meaning requires the court to conclude that Mr. Lasker was referring to the expiration of the two-year statute. Moreover, Mr. Lasker's letter, written two weeks before the two-year limitations period was due to expire, asks whether it would be necessary to file suit or whether he could "reopen the case by direct negotiation" and asked for a prompt response "[i]n view of this late date." For plaintiff to seek to have the notice of disallowance decision reopened shortly before the expiration of the two-year statute of limitations was unreasonable and inconsistent with the notion that the notice of disallowance had been withdrawn.

Plaintiff believes that the court should be persuaded by the decision in *United States v. Borg–Warner Corp.*, 108 F.2d 424 (7th Cir.1939). Plaintiff proffers that this case should be similarly treated because the dates and time periods that elapsed in *Borg–Warner* are more extreme than in the case at bar. Counsel further represents that the Federal Circuit was impressed with the similarities in the case, although the opinion was cited only in the dissent.

Other than the time similarities, *Borg–Warner* is inapposite. First, the case did not involve a withdrawal of a notice of disallowance. The *Borg–Warner* court found that the claims had not been rejected finally until the second notice was sent based on the particular facts involved in the case. The factual circumstances of plaintiff's case significantly diverge from those in *Borg–Warner*. The court in

*Borg–Warner* found that it was customary during that period of time for the Treasury Department to regard issues awaiting final decision before the Board of Tax Appeals as pending. *Borg–Warner*, 108 F.2d at 427. Second, the court held that the Commissioner's action in sending the notice of disallowance was unintentional. 108 F.2d at 428. Third, plaintiff's files were not closed, but were transferred to the Office of General Counsel consistent with the status of the case as still pending. *Id.* Additional facts which were persuasive to the court were that the Commissioner requested the taxpayer to file additional information and that the Commissioner accepted the subsequent filing. There was also a continuous exchange of correspondence between the parties. The court stated:

> The facts as related strongly to one conclusion, namely, that the refund claims in question, admittedly filed in time, had been under continual consideration from their filing date in 1926 and 1927 to at least April 11, 1933. Moreover, this construction of the facts also avoids an extremely unfair result. The plaintiff had every reason for believing that its claims, which in fact were under consideration at least until April 11, 1933, had not been finally rejected before, and evidently it acted on that understanding, for it sued within two years thereafter.

*Id.*

Plaintiff's case does not contain the sympathetic facts that the court found in *Borg–Warner* in estopping the IRS. Plaintiff acted unreasonably, after receiving the first notice of disallowance followed by Ms. Russell's letter and by waiting a period of 18 months to contact the IRS requesting that it reopen the matter. Plaintiff acted unreasonably in allowing the time within which to file suit to expire. The fact that there was a subsequent fortuitous event should not exonerate plaintiff from his previous unreasonable actions, nor should it require the IRS to pay on stale and time-barred claims.

## CONCLUSION

Based on the foregoing, it is found and concluded that plaintiff's claims are barred by the two-year statute of limitations. The complaint shall be dismissed for want of subject matter jurisdiction as to Counts I and II. Counts III and IV of the complaint shall be dismissed consistent with the parties' stipulation dated October 8, 1986. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.